**McLOUTH STEEL CORPORATION**

v.

**JEWELL COAL AND COKE COMPANY, INC., et al.**

Civ. No. 3–76–91.

United States District Court, E. D. Tennessee, N. D.

June 14, 1976.

E. H. Rayson, Franklin J. McVeigh, Kramer, Johnson, Rayson, Greenwood & McVeigh, Knoxville, Tenn., Dickinson, Wright, McKean, Cudlip & Moon, W. Gerald Warren, Douglas D. Roche, Detroit, Mich., for plaintiff.

Sam F. Fowler, Jr., Robert S. Young, Knoxville, Tenn., for defendants.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

This is an action by a minority shareholder, McLouth Steel Corp., to compel the payment of dividends by the two defendant corporations, Jewell Coal and Coke Company, Inc. and Jewell Smokeless Coal Corporation, and the directors of those corporations. Before the Court is defendants' motion to transfer the case to Abingdon, Virginia pursuant to 28 U.S.C. § 1404(a).

Section 1404(a) provides as follows:

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where *it might have been brought.*" (emphasis added)

The threshold issue in this case is whether the Western District of Virginia is a district where plaintiff's action "might have been brought." The courts are in agreement that such a district is one where: (1) the proposed transferee district has subject matter jurisdiction, (2) the defendants are amenable to service of process, and (3) venue is proper. 1 *Moore's Federal Practice* ¶ 0.145[6.–1]. These three factors will be examined seriatim.

### Subject Matter Jurisdiction

The Western District of Virginia would have subject matter jurisdiction of this action on the basis of diversity of citizenship. For diversity purposes, plaintiff is a citizen of Michigan because it is incorporated in Michigan and has its principal place of business there. 28 U.S.C. § 1332(c). The defendant corporations are citizens of Virginia and the individual defendants are citizens of Tennessee. Therefore, complete diversity of citizenship exists.

## Personal Jurisdiction

The Virginia Legislature has enacted a long arm statute which has been interpreted by the Supreme Court of Virginia as reaching as far as is permissible under the Fourteenth Amendment of the United States Constitution. *Carmichael v. Snyder*, 209 Va. 451, 164 S.E.2d 703 (1968). There is no question that the corporate defendants are amenable to process in Virginia because they are incorporated in Virginia and do business there.

The individual defendants are citizens of Tennessee and work in their capacities as directors at the corporate executive offices in Knoxville. As directors of Virginia corporations, the individual defendants have had not only "minimum," but significant contacts with the State of Virginia. They control mining and manufacturing operations which are carried out primarily in Virginia and hold their offices as directors by virtue of Virginia corporate charters. For these reasons, they must be considered to be "doing business" in Virginia for the purposes of Virginia's long arm statute. Such a construction is consistent with the Due Process Clause of the Fourteenth Amendment. *Cf. Wagenberg v. Charleston Wood Products, Inc.*, 122 F.Supp. 745 (E.D.S.C.1954).

## Venue

The general venue statute, 28 U.S.C. § 1391(a), provides as follows:

"A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in the judicial district where all plaintiffs or all defendants reside, or in which the claim arose."

There can be no dispute that the Court's power to transfer the case at bar is limited to transferring it to a district where the case might have been brought originally. This is to say that a transfer cannot be made to a court where venue would have been improper had the suit been originally filed in the proposed transferee court. *Hoffman v. Blaski*, 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960); *Glazer v. Colonial Village Corp.*, 232 F.Supp. 892 (E.D. Tenn.1964). It is settled that whether an action "might have been brought" in the proposed transferee court must be decided with reference to the federal venue statutes. Annot., 7 A.L.R. Fed. 9, § 20[c] (1971) and cases cited therein.

Defendants contend that venue is proper in the Western District of Virginia because that is the district "in which the claim arose." For the reasons stated below, we cannot agree.

The gravamen of the complaint made herein is that the defendant corporate directors in failing to declare dividends have acted arbitrarily and unreasonably and that such action constitutes a breach of trust. Complaint, 8. The members of the board of directors of the defendant corporation, or a majority thereof, are indispensable parties to this litigation. The proof in the original action will necessarily center around whether the directors have acted in good faith and have exercised sound business discretion in failing to declare dividends. 11 Fletcher Cyc. Corp. (Perm.Ed.), §§ 5325–26 (1971). Indeed, the action is closely akin to an action for fraud or breach of trust against the directors. *Id.*

Thus, it is readily apparent that the proof will be focused on the actions or inactions of the individual defendants with regard to their alleged failure to declare reasonable and proper dividends. It is not disputed that these individuals reside in the Eastern District of Tennessee, nor is it disputed that the corporate decision-making takes place primarily in Knoxville—the situs of the executive and sales offices of the defendant corporations.

It is of little moment that all the operating personnel and facilities of the defendant corporations are located in Virginia. The claim asserted does not arise out of corporate operations in Virginia but rather out of decisions made by the directors in Knoxville. *See Altman v. Central of Georgia Railway*, 124 U.S.App.D.C. 155, 363 F.2d 284, 285–86, *cert. den.*, 385 U.S. 920, 87 S.Ct. 231, 17 L.Ed.2d 144 (1966).

Defendants, through their Michigan counsel, urged the following on the district court in Detroit in the brief in support of their alternative motion to transfer the case to this Court:

"It is clear from the nature of this action that plaintiff's witnesses will not be its own employees nor will its exhibits consist of its own documents. Rather, it will be expected to use the testimony of the individual defendants and the records of the corporate defendants, *all of which are in Knoxville.*

\* \* \* \* \* \*

". . . [T]he individual defendants reside in Knoxville and therefore keep their records there.

\* \* \* \* \* \*

"*Here, the conduct complained of took place in Knoxville at Board of Directors Meetings.*" Brief of Michigan Counsel for Defendants at 2, 5, 7. (emphasis added)[1]

Even if the Court were to utilize the liberal "weight of contacts" approach to determine where the claim arose which has been espoused by some courts dealing with antitrust cases, *e. g., California Clippers, Inc. v. United States S. F. Ass'n.,* 314 F.Supp. 1057, 1063 (N.D.Cal.1970); *Philadelphia Housing Authority v. American Radiator & S. San. Corp.,* 291 F.Supp. 252, 260–61 (E.D.Pa.1968), this approach favors laying venue in the Eastern District of Tennessee. The overt acts of refusing to declare dividends occurred in Knoxville at meetings of the board of directors of the defendant corporations. The injurious effects, if any, of these overt acts were felt most directly in Michigan by plaintiff and not in Virginia.

■ Finally, it should be noted that defendant cannot waive venue by moving to transfer the case under 28 U.S.C. § 1404(a). *Johnson & Johnson v. Picard,* 282 F.2d 386, 388 (6th Cir. 1960); Annot., 7 A.L.R. Fed. 9, § 22[b] (1971).

For the reasons stated we conclude that the claim in the present case can only be considered to have arisen in the Eastern District of Tennessee and not in Virginia. Venue, therefore, would not have been proper in Virginia on the ground that the claim arose there.

Although the parties have not raised the question, the Court has considered whether venue lies in the Western District of Virginia on the theory that plaintiff is a resident of that District for the purposes of venue.

A sound argument can be made that plaintiff is a resident of the Western District of Virginia by virtue of 28 U.S.C. § 1391(c), which provides as follows:

"A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes."

The Courts are split as to whether this section defines the residence of both corporate plaintiffs and defendants, or whether, by reason of the words "may be sued," it only defines the residence of corporate defendants.

Standing alone, the first clause of § 1391(c), "a corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business . . ." appears to apply solely to corporate defendants. A number of courts, however, have concluded that the second clause of § 1391(c), "and such judicial district shall be regarded as the residence of such corporation for venue purposes," provides a blanket definition of residence for all corporate parties.

Professor Wright has aptly summarized the reasoning behind each view of § 1391(c):

1. This case was originally filed in the United States District Court for the Eastern District of Michigan. Defendants moved to dismiss for want of personal jurisdiction, or alternatively, for transfer to the Western District of Virginia or this District. The motion was sustained on the ground that personal jurisdiction was wanting. As the Court understands it, present counsel for defendants did not prepare or brief the motion to transfer.

"On its face it would appear that the special definition of corporate residence is applicable to a corporate plaintiff, since § 1391(c) provides that 'such judicial district shall be regarded as the residence of such corporation for venue purposes.' Although both the courts and the commentators were divided on this point, a majority of the early cases reached this result. They reasoned that the quoted language was a nullity unless it applied to corporate plaintiffs, since the first half of the section fully covers the cases of the corporate defendant. Further it seemed anomalous to treat a corporate defendant differently from a corporate plaintiff. The view to the contrary was that the Reviser of the Judicial Code did not intend to broaden venue for corporate plaintiffs. . . .

"In 1961, however, the Fourth Circuit held § 1391(c) inapplicable to the corporate plaintiff, and later cases have tended to follow this decision, as the only reasoned appellate decision in point. The Fourth Circuit rejected the argument that the second clause is a redundancy if not applicable to the corporate plaintiff. It said that this language was needed to assure [among other things] that corporations of different states may be joined as defendants in a district of common operation. . . .

"The matter might well have been settled along the lines of the Fourth Circuit decision, but in 1967 the Supreme Court expressly refused to pass on the question, which it called 'a difficult one, with far-reaching effects . . . .'"[2] C. Wright, *Law of Federal Courts* § 42, at 155–56 (1971) (footnotes omitted).

By the following language, Professor Wright has indicated that he favors a broad reading of § 1391(c) so as to include corporate plaintiffs:

"Since the Supreme Court has left the matter open, other courts must examine the question independently, and there is still hope that it will ultimately be held

that § 1391(c) means what it says, thus avoiding treating legislative language as meaningless. The availability of transfer under 28 U.S.C.A. § 1404(a) will prevent any abuse of this liberalized venue provision." *Id.* at 156.

Professor Moore has also recognized the conflicting views on this issue:

"The cases are in conflict as to whether § 1391(c) applies to a corporate plaintiff, or is limited to a corporate defendant. Some courts which have considered the subject have held § 1391(c) equally applicable to corporate plaintiffs on the theory that half the statute is superfluous without such an interpretation." 1 *Moore's Federal Practice* ¶ 0.142[5.–1–3], at 1414 (1974).

He has made it clear that he prefers a limited reading of § 1391(c) so as to limit its application to corporate defendants:

"While we are sympathetic with the result reached by the courts that hold § 1391(c) applies to a corporate plaintiff, as well as to a corporate defendant, we do not believe they have correctly construed the provision." *Id.* at 1415.

The cases holding that § 1391(c) defines the residence of corporate plaintiffs as well as defendants are legion. *See, e. g., Strick Corp. v. Cravens Homalloy (Sheffield) Ltd.,* 352 F.Supp. 844 (E.D.Pa.1972); *Hadden v. Barrow, Wade, Guthrie & Co.,* 105 F.Supp. 530 (N.D.Ohio 1952); *Freiday v. Cowdin,* 83 F.Supp. 516 (S.D.N.Y.1949). *See* Note, *Federal Venue and the Corporate Plaintiff,* 37 Ind.L.J. 363 (1962); 1 *Moore's Federal Practice* ¶ 0.142[5.–1–3] nn. 50, 55c and numerous other cases cited therein.

An equally significant number of courts have held to the contrary. *See e. g., Manchester Modes, Inc. v. Schuman,* 426 F.2d 629 (2d Cir. 1970); *Carter-Beveridge Drilling Co. v. Hughes,* 323 F.2d 417 (5th Cir. 1963); *Dixie Portland Flour Mills, Inc. v. Dixie Feed & Seed Co.,* 272 F.Supp. 826 (W.D.Tenn.1965), aff'd on other grounds 382 F.2d 830 (6th Cir. 1968). *See* 1 *Moore's*

2. The Supreme Court decision referred to in the above-quoted language is *Abbott Laboratories*

*v. Gardner,* 387 U.S. 136, 156 n. 20, 87 S.Ct. 1507, 18 L.Ed. 681 (1967).

*Federal Practice* ¶ 0.142[5.–1–3] n. 55b and numerous other cases cited therein.

■ The Fourth Circuit has adopted the view that § 1391(c) applies only to corporate defendants. *Robert E. Lee & Co. v. Veach*, 301 F.2d 434 (4th Cir. 1961), *cert. den.*, 371 U.S. 813, 83 S.Ct. 23, 9 L.Ed.2d 55 (1962). Although the Fourth Circuit's decisions are not binding on this Court, they are binding on the proposed transferee court in the Western District of Virginia. Thus, if this case were originally filed in that District, the Court would have been required to dismiss it had venue been challenged. For this reason, we are constrained to hold that venue is improper in the Western District of Virginia on the theory that plaintiff, by virtue of its doing business there, is a resident of that District.

Finally, defendants rely on the unreported decision of the Tennessee Supreme Court in *Brown v. Greer*, No. 146–Knox (Feb. 19, 1974), for the proposition that the Court should decline to exercise its jurisdiction because this case involves the internal affairs of a foreign corporation.

An examination of *Greer* reveals that it is in accord with the following approach delineated by the United States Supreme Court:

> "There is no rule of law, moreover, which requires dismissal of a suitor from the forum on a mere showing that the trial will involve issues which relate to the internal affairs of a foreign corporation. That is one, but only one, factor which may show convenience of parties or witnesses, the appropriateness of a trial in a forum familiar with the law of the corporation's domicile, and the enforceability of the remedy if one be granted."

*Koster v. Lumbermens Mutual Co.*, 330 U.S. 518, 527, 67 S.Ct. 828, 833, 91 L.Ed. 1067 (1946).

In treating the "internal affairs doctrine" as but one facet of the doctrine of forum non conveniens, the *Koster* Court limited its holding to cases in which a district court refuses jurisdiction on a showing of "much harassment" by a defendant and the forum chosen "would not ordinarily be thought a suitable one to decide the controversy."

330 U.S. at 532, 67 S.Ct. at 835. Furthermore, there is authority that federal courts are not bound to follow the decisions of the courts of the states in which they sit with regard to the doctrine of forum non conveniens. *Lapides v. Doner*, 248 F.Supp. 883 (E.D.Mich.1965); 1A *Moore's Federal Practice* ¶ 0.317[2] (4th ed. 1974).

■ Even if it were assumed, *arguendo*, that this Court was obliged to follow the decision of the highest court of the State of Tennessee with regard to the doctrine of forum non conveniens, we could not conclude under the facts and circumstances of this case that the Eastern District of Tennessee is so unsuitable as a forum to warrant invocation of this rather extreme doctrine.

In a case factually similar to the case at bar, the Court of Appeals for the District of Columbia held that the District Court, in relying on grounds similar to those advanced by defendant herein, erroneously dismissed a shareholders' suit under the doctrine of forum non conveniens. *Altman v. Central of Georgia Ry.*, 124 U.S.App.D.C. 155, 363 F.2d 284 (1966), *rev'g*, 254 F.Supp. 167 (1965), *cert. den.*, 385 U.S. 920, 87 S.Ct. 231, 17 L.Ed.2d 144 (1966).

For the foregoing reasons, it is ORDERED that defendants' motion to transfer pursuant to 28 U.S.C. § 1404(a), or alternatively, that the Court decline jurisdiction because this case involves the internal affairs of a foreign corporation be, and the same hereby is, denied.