## KOSTER *v.* (AMERICAN) LUMBERMENS MUTUAL CASUALTY CO.

No. 206.   Argued December 19, 1946.—Decided March 10, 1947.

*Julius Levy* argued the cause and filed a brief for petitioner.

*Stuart N. Updike* argued the cause for respondent. With him on the brief were *Weymouth Kirkland, Howard Ellis* and *Louis G. Caldwell.*

MR. JUSTICE JACKSON delivered the opinion of the Court.

This is a derivative action, in equity as are all such derivative actions, begun by plaintiff as a member and policyholder of Lumbermens Mutual Casualty Company "in the right of Lumbermen's and on behalf of all its members and policy holders." It was brought in the United States District Court for the Eastern District of New York, of which plaintiff is a citizen. Jurisdiction rests on diversity of citizenship. The defendants are the Lumbermens Mutual Casualty Company, a nominal defendant, organized under the laws of Illinois; one James S. Kemper, president and manager thereof, a citizen of Illinois, and James S. Kemper & Co., an Illinois corporation. The relief asked is that the other defendants account to Lumbermens, for damages it has sustained and for profits they

have realized on certain transactions. It is alleged that defendant Kemper, as an officer of the company, has been guilty of breaches of trust by which he, his family corporation and his friends have profited. Plaintiff charges that Kemper's salary was improvidently increased from less than $75,000 to over $251,000; that although Lumbermens was staffed and equipped to write insurance without the intervention of any agency, he employed the Kemper Company and paid it "substantial sums" as "commissions, fees and otherwise" to Lumbermens' prejudice and Kemper's profit, and that Kemper caused assets of Lumbermens to be sold to himself and favorites at prices less than their values. Kemper individually was never served in New York. Unless he should be found within that jurisdiction, some of the alleged causes of action cannot be tried in this action in any event for want of an indispensable party. Some of its issues could be tried without him.

The district court, on motion to dismiss under the doctrine of *forum non conveniens*,[1] found that Lumbermens does business in forty-eight states, but its home and principal place of business are in Illinois. There its directors live; there all records are kept; and no witness shown to be necessary to either side of the case resides outside of Illinois. The plaintiff himself lives in New York, but he does

---

[1] Some of our cases appear to hold broadly that the federal courts must exercise their jurisdiction, when they have it. *Hyde* v. *Stone*, 20 How. 170, 175; *Suydam* v. *Broadnax*, 14 Pet. 67; *Union Bank* v. *Jolly's Adm'rs*, 18 How. 503. But this is not a case in which it is urged that a state statute restricting remedy to state proceedings defeats federal diversity jurisdiction, as they were, and as was *Chicot County* v. *Sherwood*, 148 U. S. 529. In those cases, the Court held that when a state recognizes a cause of action, suit may be brought on it in federal court if diversity jurisdiction is established. That holding has nothing to do with this case. We are concerned here with the autonomous administration of the federal courts in the discharge of their own judicial duties, subject of course to the control of Congress.

not appear to have attended any meetings of policyholders or to have raised objection to the acts alleged, or otherwise to have personal knowledge so that he could possibly be a witness except as to his ownership of the policy of insurance which is not denied. It would appear necessary for him to make his own case largely from books and records in Chicago and from testimony of officers and witnesses resident there. It also is evident that the legality of many of these transactions will turn on the law of Illinois, under which Lumbermens exists and within whose territory the questioned acts took place. That would be home law if the case were tried in Chicago; it would be foreign law to New York and the case, if tried there, would involve conflict of laws. It also is urged that plaintiff's total of premium payments is less than $250, which would be the maximum possible interest he personally could have in the controversy.

Under these circumstances, two courts below concurred in the view that the case should not be tried in New York as there was ample remedy available in the state and federal courts of Illinois. Both relied upon *Rogers* v. *Guaranty Trust Co.*, 288 U. S. 123. The dissenting judge below considered that our more recent decision in *Williams* v. *Green Bay & Western R. R.*, 326 U. S. 549, implies disapproval of the *Rogers* case and restricts application of the doctrine of *forum non conveniens*. We brought the case here on certiorari. 329 U. S. 700.

This case involves the special problems of *forum non conveniens* which inhere in derivative actions, and which have been little considered by this Court. *Williams* v. *Green Bay & Western R. R.*, 326 U. S. 549, was not a derivative action brought in the right of a nominal defendant corporation. *Rogers* v. *Guaranty Trust Co.*, 288 U. S. 123, was a derivative action, but that feature of the case was given almost no attention and the emphasis was entirely on the extent to which it involved inquiry into

the "internal affairs of a foreign corporation," certainly not the most distinguishing feature of these actions.

The stockholder's derivative action, to which this policyholder's action is analogous, is an invention of equity to supply the want of an adequate remedy at law to redress breaches of fiduciary duty by corporate managers. Usually the wrongdoing officers also possess the control which enables them to suppress any effort by the corporate entity to remedy such wrongs. Equity therefore traditionally entertains the derivative or secondary action by which a single stockholder may sue in the corporation's right when he shows that the corporation on proper demand has refused to pursue a remedy, or shows facts that demonstrate the futility of such a request. With possible rare exceptions, these actions involve only issues of state law and, as in the present case, can get into federal courts only by reason of diversity in citizenship of the parties. Their existence and peculiar character were recognized by this Court in the old Equity Rules. Rule 27, 226 U. S. 656. The complexities and unique features of these actions, however, are relevant to the *forum non conveniens* issue, for in these, as in all other petitions for equitable relief, he who seeks equity must do equity, and the court will be alert to see that its peculiar remedial process is in no way abused.

The cause of action which such a plaintiff brings before the court is not his own but the corporation's.[2]  It is the

---

[2] 28 U. S. C. § 112 provides "that suit by a stockholder on behalf of a corporation may be brought in any district in which suit against the defendant or defendants in said stockholders' action, other than said corporation, might have been brought by such corporation and process in such cases may be served upon such corporation in any district wherein such corporation resides or may be found." 49 Stat. 1214. This reinforces the view that the cause of action is that of the corporation, if reinforcement is necessary. Moreover, it is obvious that the venue statute is not concerned with facilitating suit in the district of the stockholder's residence, but assures only that suit can be

real party in interest and he is allowed to act in protection of its interest somewhat as a "next friend" might do for an individual, because it is disabled from protecting itself. If, however, such a case as this were treated as other actions, the federal court would realign the parties for jurisdictional purposes according to their real interests. In this case, which is typical of many, this would put Lumbermens on the plaintiff's side. Illinois corporations would then appear among plaintiffs and among defendants, and jurisdiction would be ousted. *Indianapolis* v. *Chase National Bank,* 314 U. S. 63. But jurisdiction is saved in this class of cases by a special dispensation because the corporation is in antagonistic hands. *Doctor* v. *Harrington,* 196 U. S. 579.

Plaintiffs also, as in this case, often have only a small financial interest in a large controversy. Plaintiffs, like this one, if their own financial stake were the test, sometimes do not have a sufficient individual interest to make up the required jurisdictional amount. Again this class of cases is favored with the fiction that plaintiffs' possible recovery is not the measure of the amount involved for jurisdictional purposes but that the test is the damage asserted to have been sustained by the defendant corporation. Hence, although a plaintiff's own interest may be small, if the conditions laid down by Rule 23 of the Rules of Civil Procedure for secondary actions by

---

brought in any district in which the corporation could have sued. *Greenberg* v. *Giannini,* 140 F. 2d 550. When suit is brought in the district of the stockholder's residence, the venue statute does not provide for service on the corporation "in any district wherein such corporation resides or may be found." Since the corporation is an indispensable party, *Davenport* v. *Dows,* 18 Wall. 626, it must be only the chance stockholder's suit which can be maintained at the stockholder's residence. Corporations which have stockholders in many of the states may not find it necessary to qualify to do business and consent to be sued in all the states in which they have stockholders.

shareholders are complied with and jurisdiction is established, the federal courts are empowered to entertain the case. But the peculiarities of such actions should not be overlooked.

Where there are only two parties to a dispute, there is good reason why it should be tried in the plaintiff's home forum if that has been his choice. He should not be deprived of the presumed advantages of his home jurisdiction except upon a clear showing of facts which either (1) establish such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's convenience, which may be shown to be slight or nonexistent, or (2) make trial in the chosen forum inappropriate because of considerations affecting the court's own administrative and legal problems. In any balancing of conveniences, a real showing of convenience by a plaintiff who has sued in his home forum will normally outweigh the inconvenience the defendant may have shown. But where there are hundreds of potential plaintiffs, all equally entitled voluntarily to invest themselves with the corporation's cause of action and all of whom could with equal show of right go into their many home courts, the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened.[3] Such a plaintiff often may represent an important public and stockholder interest in bringing faithless managers to book. The nature of the secondary action is such that without

---

[3] Before the decision of the circuit court in this case, a similar derivative action was begun against substantially the same defendants and on the same causes of action in the United States District Court for the Northern District of Illinois, Eastern Division. *Schwartz* v. *Kemper*, 69 F. Supp. 152. It assures that this controversy will not be barred from judicial hearing for lack of prosecution within the statutory period. All but two of the defendants in that action have entered a general appearance, and petitioner's lawyers are associated with plaintiff's counsel in that case.

invitation from other stockholders and without their approval or supervision, the plaintiff volunteers in a position that itself creates something of a fiduciary relationship.

While, even in the ordinary action, the residence of the suitor will not fix the proper forum without reference to other considerations, it is a fact of "high significance." *International Milling Co.* v. *Columbia Transportation Co.,* 292 U. S. 511, 520. But, in derivative actions, although the plaintiff may have a substantial interest of his own to protect, he may also be a mere phantom plaintiff with interest enough to enable him to institute the action and little more. He may have taken some active part in the corporate affairs, or have personal knowledge of them, or have had dealings in course of protest and objection which make it requisite or at least expedient for him personally to be present at the trial. Or he may, like this plaintiff, make no showing of any knowledge by which his presence would help to make whatever case can be made in behalf of the corporation.

To entertain such an action places the forum in a position of responsibility toward the whole class which the plaintiff assumes to represent. To prevent collusive settlements and abuses, the Court must approve dismissal or compromise and often must give notice to the other potential plaintiffs, in this case to the other members and policyholders in whose behalf plaintiff sues and who have a right to be heard on' the propriety of settlement. Rule 23, Rules of Civil Procedure. It also takes on the troublesome business of fixing allowances to counsel and accountants for the plaintiff payable out of the defendant corporation's recovery against other defendants.[4] Thus, such a

---

[4] *Trustees* v. *Greenough,* 105 U. S. 527; see federal cases cited throughout Hornstein, *The Counsel Fee in Stockholder's Derivative Suits,* 39 Col. L. Rev. 784. Fees allowed, moreover, vary greatly with local considerations as to professional scales and other determinants of expense.

litigation brings to the court more than an ordinary task of adjudication; it brings a task of administration; and what forum is appropriate for such a task may require consideration of its relation to the whole group of members and stockholders whom plaintiff volunteers to represent as well as to the nominal plaintiff himself.

The nature of the action imports other unusual considerations when trial courts are faced with applications to dismiss for reasons of *forum non conveniens*. It might well be that the books, records and witnesses to establish all or a part of the cause of action are in or near the chosen forum. But in other cases they may all be in some distant jurisdiction, perhaps that of the defendants, as is the case here. In the ordinary suit it is plaintiff's own books and records and transactions that are important—in the derivative action it is more likely that only the corporation's books, records and transactions will be important and only the defendant will be affected by the choice of the place of production of records. In the present case, in response to defendant's motion and supporting affidavits, which *prima facie* established vexation to defendant and the inappropriateness of the court, the plaintiff shows not a single fact provable by record or witness within the district or state where he has brought suit. It is undenied that every source of evidence to prove plaintiff's own case, as well as for defendant to disprove it, is in Illinois.

The District Court also found that "the suit relates to the internal affairs of a foreign corporation" and for that reason also considered that the "courts of the state of domicile of Lumbermens and the Kemper corporation are the appropriate tribunals for the determination of this case." 64 F. Supp. 595, 599. But many kinds of cases may "relate to internal affairs of a corporation," and that fact does not have the same significance as to the doctrine of *forum non conveniens* in all settings.

Every issue of *ultra vires* or proof of officers' authority in a contract action involves inquiry into internal affairs, but that inquiry is not one which must be relegated to home jurisdiction. The contracts of a corporation may make its liabilities turn on such events as realization of net earnings which submit its internal affairs to scrutiny in order to determine liability and which any court with jurisdiction may adjudicate. *Williams* v. *Green Bay & Western R. R.,* 326 U. S. 549. On the other hand, private actions may involve the right of visitation or supervision, a public right existing in the state for the purpose of examining into the conduct of the corporation with a view to keeping it within its legal powers, to correct abuses of authority and nullify irregular proceedings. See *Guthrie* v. *Harkness,* 199 U. S. 148, 159. Such cases present a more persuasive challenge to the jurisdiction of a court foreign to the corporation's domicile under the *forum non conveniens* doctrine. We are presented in this case "with no problem of administration" of the affairs of a foreign corporation of the sort which would lead a court to decline jurisdiction. See dissenting opinion of Stone, J., in *Rogers* v. *Guaranty Trust Co.,* 288 U. S. 123, 145.

There is no rule of law, moreover, which requires dismissal of a suitor from the forum on a mere showing that the trial will involve issues which relate to the internal affairs of a foreign corporation. That is one, but only one, factor which may show convenience of parties or witnesses, the appropriateness of trial in a forum familiar with the law of the corporation's domicile, and the enforceability of the remedy if one be granted. But the ultimate inquiry is where trial will best serve the convenience of the parties and the ends of justice. Under modern conditions corporations often obtain their charters from states where they no more than maintain an agent to comply with local requirements, while every other activity is conducted far

from the chartering state. Place of corporate domicile in such ′ circumstances might be entitled to little consideration under the doctrine of *forum non conveniens,* which resists formalization and looks to the realities that make for doing justice.

*Rogers* v. *Guaranty Trust Co.,* 288 U. S. 123, holds only that the district court ". . . was free in the exercise of a sound discretion to decline to pass upon the merits of the controversy and to relegate plaintiff to an appropriate forum. . . . Obviously no definite rule of general application can be formulated by which it may be determined under what circumstances a court will assume jurisdiction of stockholders' suits relating to the conduct of internal affairs of foreign corporations. But it safely may be said that jurisdiction will be declined whenever considerations of convenience, efficiency and justice point to the courts of the State of the domicile as appropriate tribunals for the determination of the particular case." 288 U. S. at 130–31. There was disagreement in that case as to whether the facts warranted exercise of the discretion but little as to the general rule by which discretion is governed and none as to existence of the power of the court.

In the *Williams* case we reversed an exercise of discretion by a trial court, but far from laying down a rigid rule to govern discretion we said, "Each case turns on its facts." 326 U. S. at 557. The facts in that case were quite different from those before us now. The action was a class suit brought to recover amounts alleged to be due to plaintiffs on debentures. There was a possibility that under one view as to construction of the debentures, the Court would have to review the corporate internal affairs to determine net earnings which were or should be available as dividends, and under another view, to decide whether under the applicable local law directors' discretion had been abused. In that case, as here, the plaintiffs resided in New York. But the opinion points out that

the defendant, while legally domiciled elsewhere, maintained its financial office in New York; five of its six directors, all of its executive and fiscal officers except the president and general auditor, were found there; directors meetings were customarily held in New York; financial records, transfer books, minute books and the like were kept in New York. Reciting these facts, among others, we concluded "These facts plainly indicate to us that it would not be vexatious or oppressive to entertain this suit in New York, whether the availability of witnesses or any other aspect of a trial be considered." 326 U. S. at 560. Accordingly, we held that the case should not have been dismissed.

Since this case is pending in New York and is a diversity case, it is appropriate to observe that the law of New York, if applicable, is to the same effect as to the considerations to govern *forum non conveniens* questions in this class of cases. The cases on which petitioner relies to establish his contention that in a similar suit the courts of New York would not decline jurisdiction, seem to be ones in which the corporate defendant had its principal place of business in New York or a substantial amount of property there, which would assure the effectiveness of a judgment. *Miller* v. *Quincy,* 179 N. Y. 294, 72 N. E. 116; *Ramsey* v. *Rosenthal,* 242 App. Div. 526, 275 N. Y. S. 783; *Hamm* v. *Christian Herald Corp.,* 236 App. Div. 639, 260 N. Y. S. 743; *Tarlow* v. *Archbell,* 47 N. Y. S. 2d 3, 7–8, *aff'd,* 269 App. Div. 837, 56 N. Y. S. 2d 363.[5] Those cases,

---

[5] Of the other cases cited by petitioner, *Goldstein* v. *Lightner,* 266 App. Div. 357, 42 N. Y. S. 2d 338, *aff'd,* 292 N. Y. 670, 56 N. E. 2d 98, gave no expressed consideration to the problem of *forum non conveniens,* and in *Jacobs* v. *Mexican Sugar Refining Co.,* 104 App. Div. 242, 93 N. Y. S. 776, the only question raised and decided was the jurisdiction of the court over the subject-matter of the suit. *Cf. Ernst* v. *Rutherford & B. S. G. Co.,* 38 App. Div. 388, 56 N. Y. S. 403. In *Hallenborg* v. *Greene,* 66 App. Div. 590, 73 N. Y. S. 403,

however, do not consider whether the actions brought are vexatious or oppressive or whether the interests of justice require that the trial be had in a more appropriate forum. Their principal attention is given to the inquiry whether the suit concerns the internal affairs of the foreign corporation, and their uniform conclusion is that they do not. But in taking that view of one of the factors to be considered in applying the doctrine of *forum non conveniens*, they say nothing to detract from the general rule of New York as stated by Cardozo, J., in *Travis* v. *Knox Terpezone Co.*, 215 N. Y. 259, 264, 109 N. E. 250, 251: "To trace in advance the precise line of demarcation between the controversies affecting a foreign corporation in which jurisdiction will be assumed and those in which jurisdiction will be declined, would be a difficult and hazardous venture. A litigant is not, however, to be excluded because he is a stockholder, unless considerations of convenience or of efficiency or of justice point to the courts of the domicile of the corporation as the appropriate tribunals." And in *Langfelder* v. *Universal Laboratories*, 293 N. Y. 200, 204, 56 N. E. 2d 550, 552, the court said: "But it is well settled that jurisdiction in any case will be declined either in the absence of jurisdiction in the

the Appellate Division reversed in part a broad decree of the Supreme Court so as to restrict the exercise of the court's power to conform to its statement of the *forum non conveniens* doctrine: "When a judgment against a foreign corporation would not be effectual without the aid of the courts of a foreign country or of a sister State, and it may contravene the public policy of the foreign jurisdiction or rest upon the construction of a foreign statute, the interpretation of which is not free from doubt—as where the subject-matter of the litigation and the judgment would relate strictly to the internal affairs and management of the foreign corporation—the court should decline jurisdiction because such questions are of local administration, and should be relegated to the courts of the State or country under the laws of which the corporation was organized." 66 App. Div. at 597, 73 N. Y. S. at 408.

strict sense or where a determination of the rights of litigants involves regulation and management of the internal affairs of the corporation dependent upon the laws of the foreign State or where the court in which jurisdiction is sought is unable to enforce a decree if made or where the relief sought may be more appropriately adjudicated in the courts of the State or country to which the corporation owes its existence."

Confronted with defendant's motion and supporting affidavits in this case reciting the facts earlier set forth herein, the plaintiff was utterly silent as to any reason of convenience to himself or to witnesses and as to any advantage to him in expense, speed of trial, or adequacy of remedy if the case were tried in New York. He recited only that Lumbermens and the Kemper Company had been served with process, and that Kemper individually had not, but that plaintiff proposed to serve him on his "next visit to New York." For the rest, he relied on a memorandum of law. That the absence from the case of Kemper makes remedy in New York inadequate, if not impossible, as to some counts is admitted. To that extent, it makes it inappropriate for a court in New York to adjudicate some closely related issues, deciding plaintiff's grievances piecemeal. Petitioner shows not a single witness or source of evidence available to him in New York and does not deny that his complaint will require exhaustive examination of the transactions of these Illinois corporations, all of which occurred in Illinois and are to be tested by its law. The plaintiff demanded trial in New York as matter of right and of law irrespective of the facts set out by defendant. This Court cannot say that the District Court abused its discretion in giving weight to the undenied sworn statements of fact in defendant's motion papers, especially in view of the failure of plaintiff's answering affidavit to advance any reason of convenience to the plaintiff. We hold only that a district court, in a derivative action, may

refuse to exercise its jurisdiction when a defendant shows much harassment and plaintiff's response not only discloses so little countervailing benefit to himself in the choice of forum as it does here, but indicates such disadvantage as to support the inference that the forum he chose would not ordinarily be thought a suitable one to decide the controversy.

*Affirmed.*

MR. JUSTICE BLACK, dissenting.

I agree substantially with the dissent of MR. JUSTICE REED, but wish to add this thought. Today's decision goes far beyond the dubious doctrine announced in *Rogers* v. *Guaranty Trust Co.,* 288 U. S. 123. There may be rare instances in which a federal court could decline to provide an equitable remedy against multi-state corporate defendants. A prayer for relief which requires the appointment of a receiver or the detailed and continuing supervision of the affairs of a defendant corporation whose headquarters is beyond the jurisdiction of the court would in my view constitute such a situation. *Cf. Pennsylvania* v. *Williams,* 294 U. S. 176.

The whole trend of recent congressional legislation has been to protect corporate stock and security holders. See *e. g.* Securities Act of 1933, 48 Stat. 74, 15 U. S. C. § 77a *et seq.* But this legislation was not intended as a complete substitute for the antidote provided by stockholders' suits for the dangers inherent in the modern development of frequent conflicts of interest between corporate owners and corporate managers. See Lasswell, Dean and Podell, *A Non-Bureaucratic Alternative to Minority Stockholders' Suits,* 43 Col. L. Rev. 1036, 1045, 1047; Koessler, *The Stockholder's Suit: A Comparative View,* 46 Col. L. Rev. 238, 241. Yet the Court's opinion sets up almost insuperable obstacles to many stockholders who would bring such suits. A California or Florida

stockholder cannot easily go to Delaware, New Jersey, or New York to press his claims. And there is no good reason, in most actions brought to curb corporate mismanagement, why a stockholder should not bring such a suit in the state where he lives, bought his stock, and where the corporation has agents and does business. To put him to the inconvenience and disadvantage of going across the continent to the state of the managers to litigate his cause, all but nullifies his opportunity and inclination to sue to protect his interest and that of other owners.

MR. JUSTICE RUTLEDGE joins in this opinion.

MR. JUSTICE REED, dissenting.

For the purposes of this case we may assume, without examining New York law, 153 F. 2d 888, 890, that a Federal District Court, in its discretion, can dismiss a cause on the ground that the forum is vexatiously inconvenient to the defendant. Still we think the exercise of such a power is not warranted in the circumstances of this case.

We need not restate the facts, which are amply set out by the majority. The sole inquiry is whether the exercise of discretion by the trial judge in this case was an abuse of his power. On motion of Lumbermens, joined in by no other defendant, for dismissal of the complaint on the grounds that the action would require interference by the court with the internal management of Lumbermens and that, further, an indispensable party had not been served, the trial court dismissed the complaint because it required interference with the internal affairs of a foreign corporation and because the forum was not convenient. The Circuit Court of Appeals affirmed the order of dismissal on the ground that the forum in which the action was brought was not convenient for the trial of the causes of action asserted by the complaint.

By a venue statute, Congress has provided that an action may be brought in the district where the plaintiff resides against defendants residing in other states than that of the forum. This plaintiff starts with a presumption in his favor that he may maintain this action at his own residence. 28 U. S. C. § 112.

We need not tarry to consider the small interest of the plaintiff in the assets of his corporation, nor the effect of realigning the corporation on the side of the .cause where its true interest lies. However interesting the implications of these facts, they have nothing to do with a dismissal on the ground of the inconvenience of the forum. The same facts would exist no matter what the forum, and they are accordingly not pertinent to our inquiry. Nor should we concern ourselves with the possibility that this may be a strike suit. Whatever the motives of the plaintiff, the only inquiry now here is whether the forum is inconvenient or not.

In some cases, which may at the expense of analysis be grouped under the doctrine of *forum non conveniens,* the convenience of the court may be important. In such cases the crowded condition of the court's calendar and its lack of familiarity with the law of another state may be weighty factors. But in those cases neither the defendant nor the plaintiff is a resident of the forum state. *Western Union Telegraph Co.* v. *Russell,* 12 Tex. Civ. App. 82, 83 S. W. 708; *Robinson* v. *Oceanic Steam Nav. Co.,* 112 N. Y. 315, 19 N. E. 625; *Burdick* v. *Freeman,* 120 N. Y. 420, 24 N. E. 949; *Morris* v. *Missouri Pacific R. Co.,* 78 Tex. 17, 14 S. W. 228; see cases collected in 32 A. L. R. at p. 34. Cf. *Smith* v. *Empire State-Idaho Co.,* 127 F. 462. See also *Davis* v. *Farmers Co-operative Co.,* 262 U. S. 312, 317. Such cases have the support of policy which hesitates to give an advantage to parties who do not bear the expense of supporting the courts of the forum. *Douglas* v. *New York, N. H. & H. R. Co.,* 279 U. S. 377, 387.

But where the cause is transitory and the plaintiff a resident of the forum state, the convenience to the court would seem to be outweighed by its duty to entertain actions brought by citizens of the state of which the court is an arm. See *Arizona Commercial Mining Co.* v. *Iron Cap Copper Co.*, 119 Me. 213, 110 A. 429. Cf. *Mexican Nat. R. Co.* v. *Jackson*, 89 Tex. 107, 33 S. W. 857; *Slater* v. *Mexican Nat. R. Co.*, 194 U. S. 120. This would seem particularly true of federal courts whose duty it is to entertain suits between citizens of different states. *Williams* v. *Green Bay & W. R. Co.*, 326 U. S. 549, 553–4.

Since the plaintiff in this action is a resident of the forum state, we are only concerned with the relative convenience of the parties. It is clear that ordinarily a plaintiff may bring his suit in a forum of his choosing regardless of the inconvenience to him of making proof, so long as venue is properly laid. But here, as the Court points out, should the inconvenience to the defendant far outweigh any convenience to the plaintiff, it would not be fair to oppress the defendant, for it is not a legitimate advantage to a plaintiff to vex his opponent. We cannot agree, however, that in assessing the relative convenience of the parties the court may put a burden upon the plaintiff to make a positive showing that it is to his legitimate advantage to bring suit in the forum of his choosing. It is the defendant's burden to convince the court that the forum is both inconvenient to it and not convenient to the plaintiff. Despite the necessity of going elsewhere for evidence, it is hardly capricious for a plaintiff to bring suit in his home state: the advantages of so doing are usually no less real than apparent.

Accordingly we must judge this case from the showing made by the defendant as to the relative convenience of the parties in its affidavits in support of its motion to dismiss. The defendant's affiants urged that the suit be dismissed because all the proof would come from "vast quan-

tities of documents" and witnesses located in Illinois, where the main offices of Lumbermens are situated, and that transporting these documents would put the defendant to great expense. They also urged that the plaintiff had never attended any meetings of the corporation, nor ever protested to the Department of Insurance of Illinois which audited the books of Lumbermens, and that he was in a position where "the only proof personally to come from him is the establishment of his status as a policyholder." They also urged that the court was being asked to pass upon the internal management and affairs of Lumbermens.

As to the last argument: it is recognized of course that a federal court need not entertain a case which involves interference with the internal affairs of a corporation. *Rogers* v. *Guaranty Trust Co.*, 288 U. S. 123; but see *Williams* v. *Green Bay & W. R. Co.*, 326 U. S. 549. The Circuit Court was of the opinion that no interference with the internal affairs of a foreign corporation of a kind "to make the courts of Illinois a more appropriate forum than New York" would be required by this action. This Court specifically concedes there is no problem of corporate administration that leads to refusal of jurisdiction in this case. This Court, however, depends upon the relation of the issues to the internal affairs of a corporation as one factor in the exercise of the court's discretion to dismiss on the ground of *forum non conveniens*. If corporate administration is not involved, the mere fact that the issues relate to the internal affairs of the corporation does not seem significant. Almost any suit against a corporation may involve an examination into corporate affairs. Here the only inquiry, other than the alleged misconduct of the defendant Kemper, has to do with the relationship between Kemper & Co. and Lumbermens. Although this inevitably involves inquiry into internal affairs of a corpo-

ration, as does any suit brought against a corporate fiduciary for breach of trust, that inquiry is hardly an interference with corporate administration.

When there is no showing of interference with corporate administration, the party seeking dismissal is forced to depend upon what "will best serve the convenience of the parties and the ends of justice." This, we think, requires strong and clear proof to overcome the presumption that the place of trial is controlled by the venue statute. Mere inconvenience is not enough.

As for the expense to the defendant of bringing documents and witnesses to New York, even admitting that proof in this action will involve documentary evidence situated in Illinois or testimony of witnesses located in Illinois, it is not amiss to point out that the plaintiff must carry the burden in this action and must make his case before defense is necessary. Since both documents and witnesses are beyond the jurisdiction of the chosen forum, it will be the plaintiff's expense initially to transport such records and witnesses, an inconvenience which he has determined to bear, if it is true that he has no other source of proof. But even supposing that the defendant will have to transport documents and witnesses to meet the plaintiff's proof, a bare allegation to that effect is hardly a showing of such hardship as to make it proper to dismiss this case on the grounds of *forum non conveniens.* The same allegation might be made in any action brought against the defendant in any state other than Illinois on any cause, contract or tort, which involves records of the company, and this even though the corporation has chosen to do business in forty-eight states. To dismiss a cause on such bare allegations without a particular showing of the hardship involved in transporting a mass of documents and witnesses not easily accessible to the forum puts a powerful weapon into the hands of corporations alleged to

have improperly conducted their affairs. It has been the whole course of our law to break down barriers against calling corporations to account in all states where they may do wrong in doing business. *Neirbo Co.* v. *Bethlehem Shipbuilding Corp.,* 308 U. S. 165. Lumbermens qualified in New York to carry on its regular insurance business. It sold plaintiff a policy that shares in the profits of that business and it should require a showing much stronger than any here made to require this policyholder to go away from home for relief.

Petitioner, on behalf of Lumbermens, seeks recovery for excessive payments and services by Lumbermens to those who dominate the company, and for sales of company assets to those persons at inadequate prices. Petitioner must prove these allegations. None are now denied by defendant. That petitioner's success will result in "monetary damage" to Lumbermens seems impossible. Petitioner's success will enrich Lumbermens at the expense of those who are alleged to have mulcted it of large sums. Petitioner speaks for the whole membership and all policyholders of Lumbermens. From this record, we do not see that an adequate basis of fact has been laid by the respondent's affidavits to overcome the right of petitioner to pursue his remedies in the District Court for the Eastern District of New York

MR. JUSTICE BURTON joins in this dissent.