**LIBBEY–OWENS–FORD COMPANY, Plaintiff,**

v.

**McDOWELL & PARTNERS PTY. LTD., an Australian corporation, and Continental Glass Co., Ltd., a United Kingdom corporation, Defendants.**

**No. C–88–1810 JPV.**

United States District Court, N.D. California.

Nov. 21, 1988.

Kathleen A. Miller and Richard J. Grillo, Janin, Morgan & Brenner, San Francisco, Cal., for plaintiff.

Mike C. Buckley and James A. Bach, Crosby, Heafey, Roach & May, P.C., Oakland, Cal., for defendants.

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS FOR LACK OF JURISDICTION AND FORUM NON CONVENIENS**

VUKASIN, District Judge.

## I. BACKGROUND AND PROCEDURE

Libbey–Owens–Ford Company (hereinafter "Seller") is a glass manufacturing company incorporated under the laws of Delaware. Its principal place of business is in Toledo, Ohio, and it has a local office in Hayward, California. McDowell Pacific (USA) Inc., (hereinafter "Buyer"), a corporation whose known addresses are in Concord, California, ordered glass through Seller's Hayward, California office. The orders were sent to Seller's Lathrop, California manufacturing plant for production.

In the fall of 1985, Seller agreed to extend Buyer's payment terms from 90 days to 120 days and to increase Buyer's credit limit on the condition that an appropriate guaranty was obtained from Buyer's parent company. In accordance with that agreement, a letter of guaranty from Con-

tinental Glass Co., Ltd. of Hong Kong (hereinafter "Holding Company") dated 10/9/85 was received by Seller. Holding Company represented in the guaranty that it was the "ultimate holding company" for Buyer.

Thereafter, McDowell and Partners Pty, Ltd. of Australia, the 99.9 percent owner of Buyer, (hereinafter "Parent") assumed the liability of Holding Company under the guaranty; this arrangement was confirmed by a letter to Seller from Parent dated 2/6/86. Said letter represented that Holding Company was "also a unit of [Parent]." On 6/5/86, Buyer filed a petition for bankruptcy in the Northern District of California.

Seller has demanded payment on the guaranty with respect to all unpaid invoices dated prior to 12/1/85. To date, the amount of $299,202.87 remains unpaid. Seller filed a complaint in this matter on 5/17/88 against Parent and Holding Company. Seller's claim for relief is based upon the aforementioned letters from Parent and Holding Company guarantying the debts of Buyer. These letters were sent directly from Sydney, Australia and Hong Kong, respectively, to Seller's offices in Ohio. Parent and Holding Company have not yet formulated their defenses to the claim and now move to dismiss this action on the basis of (1) lack of in personam jurisdiction and (2) forum non conveniens.

## II. DISCUSSION

### A. THIS COURT HAS IN PERSONAM JURISDICTION OVER THE DEFENDANTS

Once upon a time, the sole fountainhead of jurisdictional learning was *Pennoyer v. Neff*, 95 U.S. 714, 24 L.Ed. 565 (1877). In that case, the Supreme Court decided that a state has no jurisdictional power over persons outside its borders. *Id.* at 727. *Pennoyer*, however, was entirely discarded in the seminal opinion of Chief Justice Stone in *International Shoe v. State of Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). In that case, the Supreme Court held that a state court may exercise personal jurisdiction over a nonresident de-

fendant only so long as there exist "minimum contacts" between the defendant and the forum state. *Id.* at 316, 66 S.Ct. at 158. The Court redefined the due process limitation as an element of fair trial and required that the maintenance of the suit not offend "traditional notions of fair play and substantial justice." *Id.*

The difficult problem since *International Shoe* has been to give content to the rather vague test of "minimum contacts." In 1957, the Supreme Court in *McGee v. International Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223, upheld California's jurisdiction, on the basis of *International Shoe*, in a suit to recover on an insurance policy. In that case, a California resident had been insured by a company whose obligations were assumed by another insurer with its principal place of business in Texas. *Id.* at 221, 78 S.Ct. at 200. The Texas company's only connection to California was that it mailed the insured an offer to continue his coverage, and conducted all later transactions with him by mail. *Id.* at 221–222, 78 S.Ct. at 200–201. The Court held,

> It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with [California].... Of course, there may be inconvenience to the insurer if it is held amenable to suit in California where it had this contract but certainly nothing which amounts to a denial of due process.

*Id.* at 223–224, 78 S.Ct. at 201.

After *McGee*, courts and scholars generally viewed the due process limitations on state court jurisdiction as governed by a balancing test, taking into account the interests of the forum, the plaintiff and the defendant. *See* R. CRAMPTON, D. CURRIE and H. KAY, *CONFLICT OF LAWS* 486 (4th ed. 1987). In *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295, 100 S.Ct. 559, 566, 62 L.Ed.2d 490 (1980), the Supreme Court held that an Oklahoma court could not exercise in personam jurisdiction over a nonresident automobile retailer and its wholesale distributer in a products liability action where the de-

fendant's only connection with Oklahoma was the fact that an automobile sold in New York to New York residents became involved in an accident in Oklahoma.

While the Court in *World–Wide Volkswagen Corp.* found that the defendants had no "contacts, ties, or relations" with Oklahoma, the Court stated that this result might be different if the defendants *"indirectly, through others,* serve or seek to serve the Oklahoma market." *Id.* at 296, 100 S.Ct. at 566 (emphasis added). *Cf. Asahi Metal Industry Co., Ltd. v. Superior Court,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (exercise of jurisdiction by California court over Japanese manufacturer would be unreasonable and unfair where Japanese manufacturer merely placed a product in stream of commerce). The Court in *World–Wide Volkswagen Corp.* found that two cumulative requirements must be satisfied before jurisdiction can be exercised: the defendant must have "minimum contacts" with the forum and, on balance, the exercise of jurisdiction must be "reasonable." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. at 292–293, 100 S.Ct. at 564–565. *See also* R. CRAMTON, D. CURRIE and H. KAY, *CONFLICTS OF LAWS* 486 (4TH ED. 1987); *International Shoe v. State of Washington,* 326 U.S. at 316, 66 S.Ct. at 158.

■ The minimum contacts standard articulated in *International Shoe* and *World–Wide Volkswagen Corp.* is satisfied in this case by (1) Buyer's presence in California, (2) the ordering and manufacturing of the merchandise in California, (3) the economic and corporate relationship between Parent, Holding Company and California, and (4) the affirmative guaranties made by Parent and Holding Company. Parent owns 99.9 percent of Buyer, a company who did business and incurred debts in California. Both Parent and Holding Company voluntarily and affirmatively took actions to guarantee Buyer's debts. Therefore, Parent and Holding Company are indirectly, through others (*i.e.*, Buyer) serving the California market by guaranty-

ing Buyer's purchase of glassware in California.

Furthermore, the exercise of jurisdiction in this case is reasonable. The maintenance of this suit will not offend traditional notions of fair play and substantial justice because Parent and Holding Company's affiliation with Buyer creates a substantial nexus with California.

Parent and Holding Company cite *Simonson v. International Bank,* 184 F.Supp. 362, 363–364 (D.C.N.Y.1960) for the proposition that the mere stock ownership by a nonresident corporation of a corporation doing business in the state does not constitute sufficient minimum contacts to justify the assertion of in personam jurisdiction. This reliance on *Simonson* is misplaced. The instant case is distinguishable because (1) Parent owns 99.9 percent of Buyer (as opposed to the 17 percent owned in *Simonson* ) and (2) Seller is asserting liability against Parent and Holding Company not merely because they may be Buyer's holding or parent company but because they voluntarily and affirmatively took action to guarantee Buyer's debts.

## B. THE DOCTRINE OF FORUM NON CONVENIENS IS NOT APPLICABLE

Parent and Holding Company argue in the alternative that this action should be dismissed on the basis of forum non conveniens. They claim that it would be more convenient for them to litigate in Australia and Hong Kong, respectively.

■ Generally, a plaintiff's choice of venue should rarely be disturbed. *Gulf Oil Corporation v. Gilbert,* 330 U.S. 501, 506–507, 67 S.Ct. 839, 842, 91 L.Ed. 1055. Seller's choice of forum is not so inconvenient, vexacious or burdensome to Parent or Holding Company to cause dismissal of this action. *See Koster v. (American) Lumbermens Mutual Casualty Co.,* 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067 (1947). *See also* C. WRIGHT, THE LAW OF FEDERAL COURTS § 44 (4th ed. 1983).

## III. CONCLUSION AND ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that the defendants' motion

to dismiss for lack of jurisdiction and forum non conveniens is DENIED with prejudice. This determination affords Seller an opportunity to pursue an action in a local forum against foreign corporations which guaranteed the locally incurred debts of one of their associate companies.