OAKES, Circuit Judge,
dissenting:
The majority answers the question affirmatively by implication whether the interve-nor stockholders of Proyecfin have standing. With that I do not disagree. But the majority then goes on to apply the disabling (and, I continue to think in 1993 as I did in 1975,[1] in many ways antiquated) doctrine of forum non conveniens to bar the litigation in the United States after nine years, nine months[2] here. Since the majority does so by failing to apply the critical Supreme Court case on the subject, I dissent.
The majority answers negatively and quite correctly the question whether the “Caracas Provision” in the Supervisory Agreement (a provision construed as a venue provision only in Proyecfin I, 760 F.2d at 395-96, majority op. n. 1) trumps the “forum provision” in the Loan Agreement, which was incorporated in the Supervisory Agreement by reference. *985 But the majority then re-names the forum provision, described appropriately as a “forum selection clause” in Proyecfin I, 760 F.2d at 397, a “consent-to-jurisdietion provision,” maj. op. at 980. With this change in nomenclature, the majority then goes on to hold the clause permissive (in that it permits suit to be maintained in London, New York or Caracas) rather than mandatory, like the clause in M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 613 (1972), and reasons from this that the clause may be set aside and New York declared an inconvenient forum. This to my mind is specious.
What difference does it make if the parties contract to have one, two or three different fora as convenient and then sue in one of them rather than contract to have only one forum? Surely, the Bremen decision’s respect for, and weight given to, the forum selection clause there was not based in any respect on the fact that only one forum was selected by the parties there.[3] At least nothing in the Bremen opinion even intimates that to have been the case. Certainly, logic does not take us to the majority conclusion, either.
Instead, Bremen gave weight to the Commentators, to the American Law Institute (Restatement (Second) of the Conflict of Laws § 80 (1971)), to the National Conference of Commissioners on Uniform State Laws and to the law of other common law countries. 407 U.S. at 11 and nn. 12-13, 92 S.Ct. at 1913 and nn. 12-13. See 15 Charles A. Wright, et al., Federal Practice and Procedure § 3803.1 (2d ed. 1986) for an exegesis of the strong trend since Bremen toward the enforcement of forum-selection clauses. See also Restatement (Second) of Conflict of Laws App. 263, et seq. (collecting decided cases pertaining to § 80). While Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) has made it clear that in ruling on motions to transfer venue under 28 U.S.C. § 1404(a), forum-selection clauses are not to be given either “dispositive consideration” or “no consideration,” id. at 31,108 S.Ct. at 2245, nothing in Stewart hints that because the parties have chosen to select alternate fora, the clause is to be given any the less effect than where one forum only is selected.
Having arrived at this specious premise (that an alternative forum-selection clause is “permissive” and therefore to have less weight than a mandatory or exclusive clause), the majority then goes on to give the clause here no weight at all and to analyze the case in good old-fashioned Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), Koster v. Lumbermens Mut. Cas. Co., 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067 (1947), and Piper Aircraft Co. v. Reyno, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981), forum non conveniens terms, adding that “the plaintiffs choice was overturned” in all three cases (maj. op. at 980-81). Of course, none of the three involved a forum-selection clause at all; the question each involved was simply whether the place where the plaintiff had sued was a more convenient place for trial than some other place. Since the cases did not involve forum-selection clauses at all, the list of “private interest factors” and “public interest factors” on which those cases relied, as set forth in Gilbert, 330 U.S. at 508-09, 67 S.Ct. at 843, and relied on in Piper Aircraft, 454 U.S. at 241 & n. 6, 102 S.Ct. at 258 & n. 6, do not involve the real Bremen question before us: whether a forum-selection clause is plainly unreasonable, that is, whether “enforcement [of it] would be unreasonable and unjust” or whether the clause is “invalid for such reasons as *986 fraud or overreaching,” 407 U.S. at 15, 92 S.Ct. at 1916, or whether “trial in the contractual forum will be so gravely difficult and inconvenient that [the resisting party] will for all practical purposes be deprived of his day in court,” 407 U.S. at 18, 92 S.Ct. at 1917. Thus, the majority does not look at the helpful list of nine factors to determine reasonableness set forth in then District Judge Bruce M. Selya’s 1983 decision, D’Antuono v. CCH Computax Sys., Inc., 570 F.Supp. 708, 712 (D.R.I.1983),[4] relied on in 15 Charles A. Wright, et al., supra, § 3803.1 at 21-22. The list, with its “totality of the circumstances” caveat directs us toward a qualitative evaluation of the factual circumstances involved, id. at 22-23.
Having resolved to decide the case by the wrong set of rules, as if no forum-selection clause were involved at all, the majority’s application of the rules -makes good, even persuasive, sense. What is a close case then becomes an easy one.
I come out with a totally different result when I apply the Bremen balancing standard, however. Weighing in favor of not giving force to the forum-selection clause, to be sure, are the following: Venezuela is where the housing project was to be built, where the defendants are located, where it is most convenient to prospective witnesses (though in 1993 I do hot think this is particularly significant), and where the probable documentary evidence involved is most accessible, and Venezuelan law will no doubt determine the question whether Proyecfin is a bankrupt, which may be relevant. Weighing in favor of giving effect to the forum-selection clause and hence permitting suit to proceed where the plaintiff chose nearly a decade ago to proceed are, however, the following: the loan agreement, written in English, was signed in Paris; the loan agreement, written in English, was signed in Paris; the loan administrators were foreign banks (such as Barclays Bank International Limited); the indirect owners of Proyecfin were citizens of Spain; all loan progress payments made to Proyecfin and repayment by it of the loan were required to be made in dollars, in New York City, where the guarantor bank, BIV, conducts a large operation; the purpose of the forum-selection clause was to ensure that the international banks and financiers who were putting up the money for the project in question would not be at the mercy of BIV which was owned by Venezuela (hence, inter alia, the waiver of sovereign immunity in the loan agreement); the governing law was to be the law of England; there is more than just a hint that the courts of Venezuela may be oriented openly or sub rosa to the interests of the Venezuelan government, an indirect party to the litigation; and the Proyecfin trustees are now firmly on the side of the defendant BIV which the intervenors insist forced Proyecfin into bankruptcy for BIVs own ends.[5] Moreover, this case has been pending here for almost ten years, over two years going by without a decision on a motion to dismiss the intervenors for lack of standing. In short, the totality of the circumstances measured in the interests of jus *987 tice, which Judge Selya’s caveat would have us examine, convinces me that the qualitative factual circumstances here demand the suit not be dismissed.
I accordingly dissent.

. See Fitzgerald v. Texaco, Inc., 521 F.2d 448, 455-58 (2d Cir.1975) (dissenting opinion), cert. denied, 423 U.S. 1052, 96 S.Ct. 781, 46 L.Ed.2d 641 (1976). I there called for a reexamination of the entire doctrine "in the light of the transportation revolution” that had occurred between the Supreme Court’s 1947 cases and 1975, 521 F.2d at 456. Today, I would add "in light of the communications/satellite/optics/data revolution that has also occurred since 1975.”

. This action against BIV was commenced in the Supreme Court of New York on July 3, 1984. See Proyecfin de Venezuela, S.A. v. Banco Industrial de Venezuela, S.A., 760 F.2d 390, 392 (2d Cir.1985) ("Proyecfin I").

. Rather, the Court, answering affirmatively the question whether a forum selection clause could be upheld though excluding U.S. courts and law as convenient, spoke of "ancient concepts of freedom of contract," 407 U.S. at 11, 92 S.Ct. at 1913, "historical judicial resistance,” id. at 12, 92 S.Ct. at 1914, and "when businesses once essentially local now operate in world markets,” id. I take it that when the original contracting parties here chose New York (and the United States courts, as well as the New York state courts) as one convenient forum and the United States Dollar as the convenient mode of payment, they did so because the consortium of Middle East banks that originally underwrote the Venezuelan project wanted the political stability of the United States and of England, and the reliability of their respective courts to be available as alternative fora, to the relatively less stable nation and perhaps less reliable court system of Venezuela.

.The D'Antuono factors consist of the following:
1. The identity of the law which governs the construction of the contract....
2. The place of execution of the contracts). ...
3. The place where the transactions have been or are to be performed....
4. The availability of remedies in the designated forum....
5. The public policy of the -initial forum state.... a consideration perhaps uniquely applicable where, as here, federal jurisdiction is bottomed on diversity of citizenship.
6. The location of the parties, the convenience of prospective witnesses, and the accessibility of evidence....
7. The relative bargaining power of the parties and the circumstances surrounding their dealings....
8. The presence or absence of fraud, undue influence or other extenuating (or exacerbating) circumstances....
9. The conduct of the parties_
570 F.Supp. at 712 (citations omitted).

.The conditions imposed by the majority relative to appointment of a "mutually acceptable" replacement trustee and a "meaningful effort" on the trustees' part to pursue Proyecfin’s claims in the courts of Venezuela, while seemingly mollifying the harshness of the dismissal, invite further litigation and delay and place the United States courts in a contra-comity posture of monitoring the Venezuelan courts. E.g., suppose the trustees as replaced make a settlement with BIV: must our courts determine whether the settlement is "meaningful”?