Sterling **HUNTLEY,** individually and on behalf of all others similarly situated, Plaintiff,

v.

**CHICAGO BOARD OF OPTIONS EXCHANGE; Options Clearing Corporation; and John Doe (Market Maker), Defendants.**

Civil Action No. 1:15–CV–1945–AT.

United States District Court, N.D. Georgia, Atlanta Division.

Signed Sept. 23, 2015.

Nikki Giovanni Bonner, N. Giovanni Bonner & Associates, P.C., Atlanta, GA, for Plaintiff.

Paul Dengel, Paul E. Greenwalt, III, Schiff Hardin, LLP, Steven E. Sexton, William J. Nissen, Sidley Austin LLP, Chicago, IL, Elyse Kennedy Yang, Leah Ward Sears, Michael K. Wolensky, Schiff Hardin, LLP, David G. Russell, Scott Eric Zweigel, Parker, Hudson, Rainer & Dobbs, LLP, Atlanta, GA, for Defendant.

### ORDER

AMY TOTENBERG, District Judge.

This putative class action concerns allegations that Defendant Chicago Board of Options Exchange ("CBOE") is listing, and Defendant The Options Clearing Corporation ("OCC") is clearing, stock options that

they know may become worthless after a reverse stock split. Defendants filed a Motion to Transfer Venue [Doc. 24] to the Northern District of Illinois, along with a supporting Memorandum. (Doc. 24–1) ("Def.'s Mem.") For the reasons stated in this Order, the Motion is **GRANTED**.

## I. DISCUSSION.

28 U.S.C. § 1404(a) states that a district court may transfer a civil action to another district where it might have been brought "[f]or the convenience of parties and witnesses [and] in the interest of justice."

■ The Eleventh Circuit considers nine general factors in evaluating a motion to transfer under § 1404(a):

(1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n. 1 (11th Cir.2005).

■ When considering transfer for venue purposes, "trial judges are afforded considerable discretion" in weighing the criteria under 28 U.S.C. § 1404(a). *Tommy Bahama Group, Inc. v. The Walking Company*, No. 07–cv–1402–ODE, 2007 WL 3156254 at *2 (N.D.Ga. Oct. 19, 2007). "[T]he plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations, and a transfer that would only shift inconvenience from the defendant to the plaintiff does not outweigh the plaintiff's choice for Section 1404(a) purposes." *Van Howell v. Tanner*, 650 F.2d 610, 616 (5th Cir.1981).

Finally, the party (or parties) seeking transfer bear the burden of establishing that the Section 1404(a) factors weigh in favor of transfer. *Spanx, Inc. v. Times Three Clothier, LLC*, No. 13–cv–710–WSD, 2013 WL 5636684 at *1 (N.D.Ga. Oct. 15, 2013).

### A. Where the Action Could Have Been Brought.

The first issue presented by Defendants' Motion is whether Plaintiff's action could have been brought in the Northern District of Illinois. 28 U.S. § 1404(a). Both CBOE and OCC assert (and Plaintiff does not dispute) that their principal place of business is in Chicago, in the Northern District of Illinois. (Def.'s Mem. at 11.) Accordingly, venue in that district is proper, and this action could have been brought there. 28 U.S.C. § 1391(b)(1) (venue is proper in a judicial district where any defendant resides, if all defendants are residents of the state in which the district is located); 28 U.S.C. § 1391(d) (corporation is a resident of any judicial district where it would be subject to the court's personal jurisdiction with respect to the civil action in question).

### B. Transfer Analysis Factors.

■ Next, the Court turns to the factors described by the Eleventh Circuit. Those factors weigh, on balance, in favor of transfer.

#### 1. Convenience of the Witnesses.

■ The most important factor in considering a motion to transfer is the convenience of the witnesses. *Ramsey v. Fox News Network, LLC*, 323 F.Supp.2d 1352, 1356 (N.D.Ga.2004) (Thrash, J.) This is especially true with respect to non-party witnesses who are not presumed to be willing to testify in a forum far from their home. *Id.* The moving party must make a specific showing of inconvenience to the

witnesses. *Collegiate Licensing Co. v. American Cas. Co. of Reading, Pa.*, 842 F.Supp.2d 1360, 1366 (N.D.Ga.2012).

In this matter, Defendants have identified John Peplinski as a key nonparty witness. Mr. Peplinski is the "former Vice President within [OCC's] department that administered the decision to adjust the option contracts at issue in" the Complaint. (Decl. of Karen Bilek at ¶ 7) (Doc. 24–2.) The materials and affidavits submitted to the Court make his testimony seem crucial. Defendants also claim that employees of the brokerage firms used by Huntley to execute his trades are potential nonparty witnesses, though they do not specifically identify any of those individuals. Nevertheless, since Huntley executed his trades through these Illinois companies, it seems very likely that they will have to supply witnesses to be deposed. Finally, Defendants note that their employees will likely be witnesses in this action and will testify as to the actions and votes underlying the fractional share distribution that Huntley complains of. (*Id.* ¶ 7; Decl. of William Spieth at ¶ 5) (Doc. 24–3.) While employees of the parties are generally presumed to be willing to appear in out-of-state actions, this fact should not be entirely ignored. *See Ramsey*, 323 F.Supp.2d at 1356–57 (employees of party who issued an allegedly defamatory report located in transferee forum).

Huntley, for his part, states that witnesses to the financial harm he suffered reside in Georgia, as do other options traders who use Defendants' services. However, he does not identify any of these individuals, weakening his argument against transfer. *See Scheidt v. Klein*, 956 F.2d 963, 966 (10th Cir.1992) (trial court must be supplied with some "factual information relative to materiality of witness testimony"). More, Huntley's unidentified witnesses would testify primarily concerning his damages. (Plaintiff's Memorandum in Opposition at 6 ("Pl.'s Mem.") (Doc. 30.)) The convenience of damages witnesses is given less weight than that of liability witnesses when conducting a transfer analysis, because there are no damages without liability. *Ramsey*, 323 F.Supp.2d at 1357. Finally, Huntley offers little to no evidentiary basis to support his contention that material witnesses, other than himself, reside in Georgia. And although he offers himself up as the primary witness in this matter, (Doc. 30 at 6), in truth it is very likely that the key witnesses will be current or former employees of Defendants, since what Huntley alleges is basically fraud-like conduct. It is their statements, actions, and intentions that are likely to determine the outcome of this litigation, not Huntley's.

Therefore, based on the information before the Court, it appears that most of the key liability witnesses in this matter are located in Chicago. More, it appears that virtually all of the important, identifiable non-party witnesses reside in Illinois, including the individual responsible for OCC's policy decisions concerning the disputed reverse stock split, and employees of the brokerages that Huntley made his trades through. Finally, the employees of Defendants themselves are located in Illinois. While they are party witnesses, and thus presumed to be willing to travel for litigation, their presence in Illinois bolsters the impression that virtually all of the important discovery in this matter is likely to be centered on individuals, businesses, and documents located in that state. This factor therefore weighs heavily in favor of transfer.

### 2. Location of Documents and Other Proof.

Defendants also assert that the documents relating to this matter are available at their locations in Chicago, Illinois. However, "the location of documents is not

a significant factor in the transfer analysis given the widespread use of electronic production." *Internap v. Noction, Inc.*, 114 F.Supp.3d 1336, 1341, No. 14–CV–3872–AT, 2015 WL 4459035 at *3 (N.D.Ga. June 29, 2015) (citations and quotations omitted). This holds true here where it appears that some of the documents at issue, including Defendants' policies concerning fractional shares, were available online. (Def.'s Mem. at 7.) This factor thus weighs only slightly in Defendants' favor.

### 3. Convenience of the Parties.

The "convenience of the parties" factor further supports Defendants' arguments that transfer is appropriate. While simply shifting the inconvenience of litigating in an out-of-state forum from one party to another is not a valid reason to transfer a case, *Rice v. PetEdge, Inc.*, 975 F.Supp.2d 1364, 1374 (N.D.Ga.2013) (denying transfer because it would only shift the burden of travel), there is more at work here. As described above, both Defendants, and almost all identifiable non-party witnesses, are located in Illinois, while exactly one identified witness—Huntley himself—lives in Georgia.

In addition, this case is brought as a putative class action. If a class is approved, then plaintiffs will reside all over the country, meaning any two given states will likely be "of equal convenience" as a forum. *See In re Galectin Therapeutics, Inc. Securities Litigation*, No. 3:14–cv–0399–RCJ, 2015 WL 260881 at *3 (D.Nev. Jan. 21, 2015) (transferring class action case from Nevada to Georgia where plaintiffs lived in Nevada but nearly all defendants were located in Georgia). The putative class action nature of this case further weakens Huntley's position. This factor therefore weighs in favor of transfer.

### 4. Locus of Operative Facts.

The Parties disagree as to where the locus of operative facts lies in this case. Huntley alleges that Defendants have "committed acts in the ... Northern District of Georgia," (Pl.'s Resp. 6) by shipping, distributing, offering for sale, and advertising their products in this state. Defendants claim that the actions leading to the adjustment decisions that Plaintiff complains of all took place in or were coordinated from Chicago. (Def.'s Mem. 8.)

While Defendant may have traded in options from the comfort of his home, it appears that what he really claims is that Defendants made a faulty or fraudulent policy decision or misrepresentation. (*See* Compl. ¶¶ 21–27, 37–44.) Such a decision or alleged misrepresentation would naturally be coordinated or emanate from Defendants' headquarters in Chicago—and Defendants claim in their motion that this is the case (while of course denying any misrepresentation). (*See* Def.'s Mem. 8–9) ("votes taken in favor of the adjustment decisions that are the subject of Huntley's Complaint" were coordinated from or made in Chicago). Because "[m]isrepresentations and omissions are deemed to 'occur' in the district where they are transmitted or withheld, not where they are received," it is plain that the facts at issue are centrally tied to Illinois. *In re Hanger Orthopedic Group, Inc. Securities Litigation*, 418 F.Supp.2d 164, 169 (E.D.N.Y. 2006) (transferring case).

Moreover, Defendants have identified several of the people primarily responsible for the allegedly wrongful policy decision, and they all reside in Chicago. (*Id.*) Finally, Plaintiff submitted the transactions at the heart of this dispute through brokerage firms located in Illinois, cementing the impression that almost every important fact in this case is likely to be connected in a significant way to that state. For these reasons, the center of gravity of this case is in Chicago. This factor therefore weighs strongly in favor of transfer.

## 5. Availability of Process to Compel Witnesses.

As described in Section B.1 above, the material non-party witnesses, including Mr. Peplinski and the employees of the brokerage firms that Plaintiff utilized, all reside in the Northern District of Illinois. These individuals could not be compelled to testify in Georgia. Fed.R.Civ.P. 45(c). According to Defendants, they would be important witnesses in this matter, strongly connected to the transactions and policy decisions that gave rise to this suit. Based on the allegations in the Complaint, and the affidavits submitted by Defendants in support of their Motion, the Court tends to agree. This factor again weighs in favor of transfer.

## 6. Relative Means of the Parties.

The next factor in the *Manuel* test is whether the relative means of the parties weighs in favor of or against transfer. In the affidavit attached to his Response, Huntley testifies that he has been "forced into a life of poverty" and is "virtually penniless and in debt." (Doc. 30–1 at ¶¶ 12, 14.) Counsel for Huntley (and perhaps Huntley himself) is likely to have to travel to Chicago for the depositions of non-party witnesses regardless of whether or not transfer is ordered. However, the Court recognizes that Huntley is likely to have to travel more if transfer is ordered, because he may be required to appear for trial, evidentiary hearings, or other in-person proceedings. In addition, Huntley may have to retain local counsel—which the Court recognizes is no small expense. This factor therefore weighs against transfer.

## 7. Weight Given to Plaintiff's Choice of Forum.

■ A plaintiff's choice of a forum is generally entitled to great deference. *See Esfeld v. Costa Crociere, S.P.A.,* 289 F.3d 1300, 1311 (11th Cir.2002) (discussing deference in the context of *forum non conve-* *niens* ). This is especially true when a plaintiff files suit in their home forum, as Huntley has done. *Rice v. PetEdge, Inc.,* 975 F.Supp.2d 1364, 1374 (N.D.Ga.2013) (citing *Acrotube, Inc. v. J.K. Fin. Grp., Inc.,* 653 F.Supp. 470, 477 (N.D.Ga.1987) (Shoob, J.) ("[a]bsent clear justification, courts in this district have consistently refused to override a plaintiff's choice of forum, especially, where ... the plaintiff has brought suit in its home district")).

That being said, this factor is not dispositive on its own. *See Aldana v. Del Monte Fresh Produce N.A., Inc.,* 578 F.3d 1283 (11th Cir.2009) (discussing plaintiff's choice of forum in the context of *forum non conveniens* ). This is especially true "when ... the] forum has little connection with the operative facts of the lawsuit," which is the case here. *Tischio v. Bontex, Inc.,* 16 F.Supp.2d 511, 521 (D.N.J.1998). More, a number of courts have found this factor is less important when the case at issue is a securities-related class action. *E.g., Koster v. American Lumbermens Mut. Cas. Co.,* 330 U.S. 518, 524, 67 S.Ct. 828, 91 L.Ed. 1067 (1947) ("where there are hundreds of potential plaintiffs ... the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened") (securities class action). Thus while this factor weighs in favor of Plaintiff, it does not determine of Defendants' Motion by itself.

## 8. Trial Efficiency and Interests of Justice.

■ Finally, the Court must consider whether efficiency and the interests of justice weigh in favor of or against transfer. When weighing this factor, courts evaluate "[a]ccess to evidence, availability of witnesses, the cost of obtaining witnesses ... and all other practical problems that make trial of a case easy, expeditious, and inexpensive." *Tommy Bahama,* 2007 WL 3156254 at *3. As described above, these factors largely weigh in favor of transfer.

Nor are there any serious concerns about efficiency, administrative delay, or prejudice in the alternate forum. This case is in its infancy, and the Court has yet to make a ruling on any dispositive motion. Thus there are no sunk costs that would tend to make the administration of this case more efficient in this Court than in any other. And, as Defendant notes, the time-to-trial in the Northern District of Illinois is not significantly different than it is here. Finally, the Court is unconcerned, despite Plaintiff's protests, that Defendants will obtain a "home field advantage" through transfer. (Pl.'s Resp. 7.) The Court has complete faith that its brethren in the Northern District of Illinois can and will adjudicate this case fairly. All told, it is in the interests of justice that this matter be transferred to Illinois, where the underlying events took place.

## II. CONCLUSION.

The Court understands that Huntley wants to maintain his choice of forum, and that he is facing financial difficulties. However, the Court cannot ignore the fact that this case is primarily about alleged acts and omissions that took place in Illinois. These acts were allegedly perpetrated by individuals who reside in Illinois. And this case will require testimony from witnesses, including nonparty witnesses, who also live in Illinois. On balance, these factors weigh strongly in favor of transfer. Accordingly, Defendants' Motion to Transfer [Doc. 24] is **GRANTED**. It is **ORDERED** that this Cause of Action be **TRANSFERRED** to the United States District Court for the Northern District of Illinois. The Clerk is **DIRECTED** to take all necessary steps to effectuate the transfer.