**Jessop v. ACF Industries LLC**

*Robert E. Paul,* for plaintiff.
*John C. McMeekin II,* for defendant.

ACKERMAN, *J.,* March 17, 2004—Defendant, ACF Industries LLC, filed the instant motion to dismiss based on forum non conveniens pursuant to 42 Pa.C.S. §5322(e) on October 6, 2003.

This case is one of the asbestos mass tort litigation cases currently coordinated in the Complex Litigation Center of the Court of Common Pleas of Philadelphia County. It has been brought on behalf of Janet F. Jessop, administratrix of the estate of Harold W. Jessop, deceased, and Janet F. Jessop, widow, in her own right, who is a resident and a citizen of the state of Kansas. (See complaint—civil action asbestos, ¶1.)

The complaint was filed on November 20, 2001 and avers in material part as follows:

"(1) . . . The decedent who was exposed to asbestos was Harold W. Jessop, who died on March 16, 2001. . . .

"(3) Plaintiff Harold W. Jessop's only dependent was his wife, Janet Jessop. . . .

"(6) Plaintiff's work history is as follows:

"(a) from 01/01/1956 to 01/01/1972—Atchison, Topeka & Santa Fe Railway as an electrician.

"(7) Plaintiff was exposed to asbestos at all sites set forth *supra.* . . .

"(10)(a) ACF Industries is the successor in interest to American Car and Foundry. At all times material, American Car and Foundry manufactured and distributed railroad cars insulated with asbestos. Release of asbestos dust from the American Car and Foundry products caused the injuries complained of herein. . . .

"(14) During the course of his employment at the worksites noted in paragraph 6 *supra,* plaintiff believes and therefore avers that the decedent was exposed to asbestos fiber or asbestos products manufactured, sold, distributed, or otherwise placed into the stream of commerce by the defendants. The term asbestos products as used herein includes asbestos-containing products such as boilers and engines and furnaces and turbines. The term asbestos-containing as used herein means products sold with asbestos or products whose designers, manufacturers and fabricators knew, should or could have known, that it would be insulated or could be insulated with asbestos. . . .

"(16) Plaintiff's deceased, Harold W. Jessop, was diagnosed as having contracted mesothelioma as a result of his asbestos exposure by Dr. David Hohertz M.D. on or about November 23, 1999."

Plaintiff-decedent's entire 16-year work history has been outside the Commonwealth of Pennsylvania and solely in the state of Kansas.

Plaintiff-decedent was diagnosed with an alleged asbestos-related disease by Dr. David Hohertz, a Kansas doctor.

Depositions of the relevant witnesses that plaintiff disclosed were not completed when the motion to dismiss was filed.

Defendant asserted that Kansas is an alternative forum available to the plaintiff.

Stipulations have been filed by the moving defendant and every *remaining* defendant in this case, providing as follows:

(1) Defendant consents to the transfer of this action and submits to the jurisdiction of the State Court of Topeka, Kansas, Shawnee County District Court;

(2) Defendant agrees to accept service upon transfer of this action to the State Court of Topeka, Kansas, Shawnee County District Court;

(3) Defendant agrees to waive the statute of limitations defense, to the extent that this defense exists in Kansas.

Defendant asserts that throughout the course of discovery, *so far completed,* they have been required to travel to Kansas at great expense.

Plaintiff resides and is domiciled in Kansas. Defendant asserts that all pertinent events occurred outside of Pennsylvania. All known and additional witnesses likely reside outside of Pennsylvania. The public interest in efficient judicial administration strongly favors dismissing this action currently filed in the Philadelphia County Court of Common Pleas and permitting plaintiff, if so desired, to re-file the action in Kansas. Philadelphia has no connections with the allegations plaintiff has put forth in this action. Simply put, there is no relationship between the facts of this case and Philadelphia County. Plaintiff has no connection to Philadelphia County whatsoever. Accordingly, neither Pennsylvania nor Philadelphia citizens should be forced to expend time and tax dollars on a controversy that does not even have tangential contacts with Pennsylvania, let alone Philadelphia County.

The court notes that counsel for all parties agreed upon the orders, procedures and practices that govern the ex-

change of discovery in asbestos cases and no objection was filed by either party in this case to orders issued pursuant to those understandings of all parties. By order of this court, dated August 26, 2002 (a copy of which is attached hereto), this court announced that all product identification and answers to interrogatories are not due until just 90 days prior to jury selection. Further, pursuant to the court's directive, all depositions of plaintiff and co-workers, must be completed no later than 30 days prior to jury selection. As defendant correctly points out, the information needed to properly support the elements of this petition to dismiss for forum non conveniens only became available six days before the filing of the motion to dismiss on October 6, 2003. Plaintiff's product identification witness, Vincent Schmidtlein, was only recently deposed in Topeka, Kansas on September 22, 2003. Mr. Yencho's testimony was not completed until September 30, 2003. Mr. Schmidtlein testified that he only knew Mr. Jessop to have worked in the Topeka, Kansas rail yard of Atchison Topeka & Santa Fe Railways. (See exhibit "B" at p. 124.)

In this case, the court notes that Kansas law would most likely apply.

Defendant's counsel, John C. McMeekin II, Esquire filed a detailed affidavit (attached to motion to dismiss) covering the foregoing facts, and in material part setting forth:

(1) The instant matter involves decedent Harold Jessop's alleged exposure to asbestos while working as an electrician for the Atchison, Topeka & Santa Fe (ATSF) Railroad from 1956 to 1972.

(2) It is alleged that decedent was diagnosed with mesothelioma on November 23, 1999.

(3) Harold Jessop commenced an action for compensation for his alleged asbestos-related condition against the successor to ATSF, Burlington Northern, Santa Fe Railroad under FELA.

(4) Mr. Jessop's FELA case was filed in Jackson County, Missouri.

(5) Decedent died on March 16, 2001 in Topeka, KS. . . .

(11) Plaintiff's only alleged exposure to asbestos occurred while he was employed at the ATSF Topeka rail yard located in Topeka, KS. . . .

(13) Plaintiff has identified numerous product identification witnesses who have critical information concerning decedent's alleged exposure to asbestos.

(14) Each of these product identification witnesses is represented by counsel, John Roven, in asbestos litigation against their employer, ATSF, or its successor, BNSF.

(15) Two of those witnesses, Vincent Schmidtlein and Donald Anders, have been deposed and both testified that decedent's only alleged exposure to asbestos was while Mr. Jessop was employed to the ATSF Topeka, KS rail yard as an electrician.

(16) The depositions of Mr. Schmidtlein and Mr. Anders were taken in Topeka, KS after counsel for plaintiff refused to make them available for deposition in Philadelphia.

(17) Both Mr. Schmidtlein and Mr. Anders reside in the Topeka, KS vicinity.

(18) Upon information and belief, all of the remaining product identification witnesses reside in the Topeka, KS vicinity.

(19) Plaintiff has not disclosed any fact witnesses who reside in Pennsylvania.

(20) Thomas Yencho, a client of Mr. Paul's in an unrelated asbestos case, was deposed in Philadelphia and testified that he had no information relative to Mr. Jessop's alleged exposure to asbestos.

(21) Plaintiff's counsel has refused to present the remaining Kansas product identification witnesses for deposition in Philadelphia County.

(22) In order for defendants to compel the depositions of these and other fact witnesses, counsel must obtain a special judicial commission.

(23) Absent their consent, these witnesses cannot be compelled by defendants or this honorable court to appear for depositions or give testimony at trial in Philadelphia County.

(24) All of plaintiff/decedent's treating physicians reside outside Philadelphia County and the Commonwealth of Pennsylvania.

(25) None of the plaintiffs live in Pennsylvania.

(26) None of decedent's injuries occurred in Pennsylvania.

(27) None of decedent's treatment occurred in Pennsylvania.

(28) None of decedent's treating physicians reside in Pennsylvania.

(29) None of decedent's original medical records are located in Pennsylvania.

(30) None of the witnesses relevant to decedent's damage claims live in Pennsylvania.

(31) Discovery conducted to date may be utilized in the new forum.

(32) There is virtually no contact with Philadelphia County or the Commonwealth of Pennsylvania.

(33) The only contact with Philadelphia County or Pennsylvania is that plaintiff's counsel's office is located in Philadelphia, PA, which is irrelevant to the instant petition.

(34) The alleged connections to Pennsylvania which are cited by plaintiff (*i.e.,* doing business in Pennsylvania for various defendants) apply to jurisdiction and propriety of venue which are not relevant to defendant's petition to dismiss.

(35) By electing to pursue this action in Pennsylvania, plaintiff has imposed substantial burden upon defendants.

(36) In order to depose out-of-state witnesses, defendants must first obtain the consent of their counsel, John Roven, and then, if not by voluntary appearance, must obtain an out-of-state commission to conduct the depositions.

(37) Counsel for defendants must incur substantial time and expense to travel to Kansas and then drive to Topeka, KS to conduct the depositions of the product identification witnesses.

(38) It will be necessary, but not logistically enforceable for defendants to seek a commission to compel witnesses to travel to Philadelphia to testify at the trial of this matter.

(39) Absent consent to appear at trial, all of the fact witnesses will be presented via videotape or by reading deposition transcripts.

(40) As a result, the time and expense for the deposition of a single fact witness is considerably increased.

(41) The presiding judge will be compelled to analyze the choice of law between Kansas and Pennsylvania.

(42) Pennsylvania judges must apply Kansas law, thus applying the laws of a foreign jurisdiction to which they are not generally accustomed.

(43) Jurors from Philadelphia County will unnecessarily be compelled to sit for jury duty for a Kansas dispute.

(44) The Philadelphia Mass Tort Program, which is nationally recognized, was not designed for nor does it receive any funding to serve as an alternative forum for the federal asbestos multi-district litigation program.

(45) Any alleged delay is the result of plaintiff's strategic choice of forum as the Philadelphia Mass Tort Program is nationally recognized for efficient administration of cases involving Philadelphia exposure.

(46) This court and program is not compelled to place the congestion of other courts in a position paramount to the interests of the citizens of Pennsylvania.

(47) No defendant which has been identified and which would be subject to being named as a defendant in the refiled litigation has objected to refiling in Shawnee County, Kansas.

(48) Defendant is willing to consent to service in Kansas.

(49) Numerous defendants are expressly willing to consent to waive the application of Kansas' statute of limitations to ensure that this matter can be transferred and that an alternate forum will be available for plaintiffs.

(50) Moreover, under Kansas law, the statute governing the statute of limitations for wrongful death claims, K.S.A. 60-513, permits a "discovery" period under which the causes of action listed in subsection (a) (which include asbestos-related injuries) shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party, but in no event shall an action be commenced more than *10 years beyond the time of the act giving rise to the cause of action.* (emphasis added)

Plaintiff's response in a letter dated October 10, 2003, does not challenge the facts set forth in the foregoing affidavit.

Moving defendant in its response of October 17, 2003, points out that the motion to dismiss was filed approximately five months before the then scheduled trial in February 2004.

Plaintiff's further response of November 3, 2003, asserts, *without foundation,* that a prior continuance obtained at the request of defendant without objection by plaintiff was used to file the instant motion to dismiss. The only material assertion in this response was that "*all* defendants must sign an agreement not to press the statute of limitations." That concern has been satisfied.

As to the objection of "no affidavits from affected witnesses," the affidavit of counsel is sufficiently supported by the record to be effective and was a means previously accepted by this court.

On December 16, 2003, a Rule Hearing was held by this court. Neither counsel chose to submit live testimony but only oral argument. (See TR 21, Dec. 16, 2003.)

Counsel for plaintiff suggests that the *possibility* that Congress may abolish state actions for asbestos claims means that Kansas will not be an alternate forum. This speculative argument was unfounded on December 16, 2003 (hearing date) and remains unfounded as of the date of this opinion. (See TR 45-51, Dec. 16, 2003.) This court has considered and rejected this argument.

Defendant in a supplemental memorandum filed December 24, 2003 lists plaintiff's co-worker witnesses (exhibit "E"), comprising *three* pages, only two of which have been subject to discovery. Plaintiff liability witnesses are set forth in exhibit "F."

A letter from counsel for plaintiff to counsel for defendant, dated December 22, 2003 (exhibit "L"), suggests that "most of Kansas witnesses are too old or sick to be helpful." Defendant should have the opportunity to take their discovery and not rely on the assertion of opposing counsel that a designated two, favorable to plaintiff, were the only ones to be discovered or presented at trial.

The doctrine of forum non conveniens has been codified at 42 Pa.C.S. §5322(e), which provides as follows:

"(e) *Inconvenient forum.*—When a tribunal finds that in the interest of substantial justice the matter should be heard in another forum, the tribunal may stay or dismiss the matter in whole or in part on any conditions that may be just." 42 Pa.C.S. §5322(e); *Cinousis v. Hechinger*

*Department Store,* 406 Pa. Super. 500, 501, 594 A.2d 731, 732 (1991).

The case of *Humes v. Eckerd Corporation,* 807 A.2d 290 (Pa. Super. 2002) is instructive as to the standard for this court to follow in this case having clarified prior case law.

The *Humes* court stated at page 295:

"In the absence of specific guidance from the Pennsylvania Supreme Court, and after consideration of the existing body of case law, we will follow *Poley, supra,* and decline to find error in the low court's refusal to apply *Cheeseman* to this section 5322(e) petition."

"In *Poley v. Delmarva Power and Light Company,* 779 A.2d 544 (Pa. Super. 2001), a panel of this court addressed an appeal of a motion to dismiss for forum non conveniens with leave to file in the state of Maryland. In setting forth the standard of review of an order dismissing an action on the basis of forum non conveniens, the *Poley* court did not apply the *Cheeseman* 'oppressive and vexatious' test, but instead declared, inter alia, that:

"The two most important factors for the court to consider [in making the determination of whether to dismiss a suit on the basis of forum non conveniens] are (1) a plaintiff's choice of the place of suit will not be disturbed except for weighty reasons, and (2) no action will be dismissed unless an alternative forum is available to the plaintiff.

"*Poley,* 779 A.2d at 546 (citing *Page v. Ekbladh,* 404 Pa. Super. 368, 590 A.2d 1278 (1991))." (At page 293-94, *Humes, supra.*)

The *Humes* court thus agreed that the trial court was correct in applying the "private and public factors" test instead of the "oppressive and vexatious" test. (Page 290.) The *Humes* court reversed the trial court because a complaint in the underlying case had not yet been filed and, thus, there was an insufficient record to support dismissal under section 5322(e).

The case of *Cinousis v. Hechinger Department Store,* 406 Pa. Super. 500, 594 A.2d 731 (1991) provides the meaning of "private and public factors" to be considered, citing *Plum v. Tampax Inc.,* 399 Pa. 553, at 560-62, 160 A.2d 549, at 553 (1960) quoting comment at section 117(e) of Restatement (Second) Conflict of Law. See also, *Rini v. New York Central Railroad Co.,* 429 Pa. 235, 238-40 240 A.2d 372, 373-74 (1968), as follows:

"It is well within the power of [a trial] court, in the interests of justice, to decline to exercise its jurisdiction where, upon consideration of the parties, the witnesses, the situs of the cause of action and other kindred reasons, the litigation can more appropriately be conducted in another forum. *Plum v. Tampax Inc., supra,* 399 Pa. at 560 160 A.2d at 552. See *Koster v. (American) Lumbermens Mutual Casualty Co.,* 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067 (1947) and *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). See also, *Alford v. Philadelphia Coca-Cola Bottling Co. Inc.,* 366 Pa. Super. 510, 513, 531 A.2d 792, 794 (1987) ('[S]ection 5322(e) applies when a tribunal of this jurisdiction determines that a tribunal in another jurisdiction would offer a more convenient and appropriate situs for the action.'). The factors to be considered in making such a determi-

nation have been identified by our Supreme Court as follows:

"(c) Factors to be considered. The two most important factors look to the court's retention of the case. They are (1) that since it is for the plaintiff to choose the place of suit, his choice of a forum should not be disturbed except for weighty reasons, and (2) that the action will not be dismissed in any event unless an alternative forum is available to the plaintiff. Because of the second factor, the suit will be entertained, no matter how inappropriate the forum may be, if defendant cannot be subjected to jurisdiction in other states. The same will be true if plaintiff's cause of action would elsewhere be barred by the statute of limitations, unless the court is willing to accept defendant's stipulation that he will not raise this defense in the second state.

"The remaining factors can best be grouped under the two principal interests involved: those of the parties and those of the public. This has been done as follows by Mr. Justice Jackson in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508 [67 S.Ct. 839, 843, 91 L.Ed. 1055] (1947):

"If the combination and weight of factors requisite to given results are difficult to forecast or state, those to be considered are not difficult to name. An interest to be considered, and one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that

make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforceability of a judgment if one is obtained. The court will weigh relative advantages and obstacles to a fair trial. . . .

"Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. There is an appropriateness, too, in having the trial . . . in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

"These two sets of factors are not mutually exclusive but rather supplement each other." 406 Pa. Super. at pages 502-503, 594 A.2d at page 732 of *Cinousis.*

In *Cinousis,* the Supreme Court further stated:

"The plaintiffs are not residents of Pennsylvania. The pertinent events giving rise to the cause of action occurred outside of Pennsylvania. The relevant medical records of plaintiff's physician after the alleged accident are located outside of Pennsylvania. The known witnesses reside outside of Pennsylvania and any additional witnesses will most likely reside outside of Pennsylvania. Finally, the plaintiffs have another more convenient forum available to them in New Jersey.

"We discern no abuse of discretion in the trial court's decision.

"Because appellants are not residents of Pennsylvania, the interest of this Commonwealth in providing a

forum for its residents to litigate their disputes is not implicated. See *Bolanos v. Gulf Oil Corp.*, 502 F. Supp. 689, 691 (W.D. Pa. 1980), *aff'd*, 681 F.2d 804 (3d Cir. 1982). The fact that the witnesses and documentary evidence are located in New Jersey make it *potentially* more difficult to try this case in Pennsylvania. Continued proceedings in Pennsylvania also offer the *possibility* of delay and increased costs in completing a trial. Additionally, because the events at issue in this case occurred in New Jersey, it is likely that the substantive rights of the parties will be determined according to New Jersey law. Under similar circumstances, it has been observed that (emphasis supplied):

"in view of the paucity of contacts that the instant litigation has with the Commonwealth of Pennsylvania, absent compelling reasons, appropriate weight should be given to the desirability of having a Pennsylvania judge interpret and apply the law of another jurisdiction to determine the respective rights and duties of the parties in question. The only discernible contact that this case has with Pennsylvania is the location of plaintiff's counsel, and we refuse to recognize this as a compelling consideration. In sum, the circumstances presented in the instant case supply the 'weighty reasons' necessary to disturb this plaintiff's choice of forum.

"*Westerby v. Johns-Manville Corp.*, 32 D.&C.3d 163, 174-75 (Phila. Cty. 1982) (cited with approval in *Alford v. Philadelphia Coca-Cola Bottling Co. Inc., supra*). See also, *Daugherty v. Inland Tugs Co., supra* (trial court abused its discretion by refusing to dismiss lawsuit whose only contact with Pennsylvania was that plaintiff's expert witness resided there); *Norman v. Norfolk and West-*

*ern Railway Co.,* 228 Pa. Super. 319, 323 A.2d 850 (1974) (same).

"In view of the absence of any significant contact between appellant's cause of action and this Commonwealth, the need to apply the substantive law of New Jersey, and the significant backlog of cases which currently plagues the dockets of the Philadelphia court system, we hold that the trial court did not abuse its discretion when it dismissed appellant's action in the instant case." 406 Pa. Super. at 504-505, 594 A.2d at 733.

In the case of *Tyro Industries v. James A. Wood Inc.,* 418 Pa. Super. 296, 299-302, 614 A.2d 279, 281-82 (1992), the facts were essentially as follows:

"Appellant Tyro Industries (Tyro) is a New York corporation registered to do business in Pennsylvania, and which maintains its principal place of business in New York. Appellee FCO is a business incorporated under the laws of New York. Appellee Great American Insurance Company is a New York corporation. The instant controversy was generated out of a construction project in Northampton County, Pennsylvania, wherein Tyro was a subcontractor with the Pennsylvania Department of Transportation (PennDOT), and was required to maintain insurance coverage in order to work on that project. James Wood Inc. (later released from case), acting as an insurance broker, issued insurance coverage under a Great American Insurance Company policy. AFCO financed payment for the insurance coverage.

"The insurance contract was written and subsequently suspended, for alleged failure to pay premiums, in the state of New York. As a result of the suspension, Tyro

was discharged from the construction project. Consequently, Tyro filed a complaint in the Philadelphia Court of Common Pleas alleging that Great American, AFCO, and Wood breached their contracts with Tyro when they caused the insurance coverage to be improperly suspended. . . .

"The court noted that Tyro, AFCO, and Great American are all New York corporations. Trial court opinion, 10/17/91 at 4. The court also noted that the insurance financing agreement, the insurance contract, and the alleged breach thereof all arose in New York, and that virtually all witnesses reside in New York. *Id.* The court considered these and other private factors it was required to consider in a forum non conveniens analysis. . . .

"The court took note of the fact that resolution of the case in Philadelphia County would result in a needless conflict of laws situation, because New York banking laws would apply to these facts. Trial court opinion, 10/17/91 at 6-7. The court pointed out that if the case were heard in Philadelphia, Pennsylvania tax dollars would be spent on a controversy with only tangential contacts with Philadelphia."

The *Tyro* court also considered the state of New York's statute of limitations which provided the appellant with sufficient time within which to file another complaint in the appropriate forum (in our case, the stipulation to be filed by the defendant satisfied this requirement).

It was in the context of the necessity in *Tyro* for the filing of a new action that the *Tyro* court mentioned that "no discovery had yet been taken when the court (trial court) filed its opinion." (418 Pa. Super. at 302, 614 A.2d

at 282.) The *Tyro* court does not address whether the extent of discovery already taken could by itself have changed the result.

The case of *Shears v. Rigley,* 424 Pa. Super. 559, 565-67, 623 A.2d 821, 824-25 (1993) provides guidance on the balancing of private and public elements or factors as follows:

"A court must balance the private and public elements and 'unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.' *Petty,* 363 Pa. Super. at 281, 525 A.2d at 1232 (quoting *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947)).

"The trial court must consider the following 'private' elements in making this determination:

"the relative ease of access to sources of proof, availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if a view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

"*Petty,* 363 Pa. Super. at 281-82, 525 A.2d at 1232 (citing *Gulf Oil Corp.,* 330 U.S. at 508-509, 67 S.Ct. at 843); see also, *Rini v. N.Y. Central R. Co.,* 429 Pa. 235, 239, 240 A.2d 372, 374 (1968); *Plum v. Tampax Inc.,* 399 Pa. 553, 560-61, 160 A.2d 549, 553 (1960).

"Additionally, the following 'public' interests must be factored into the trial court's analysis:

"problems of creating court congestion and imposing jury duty upon people of a community which has no re-

lation to the litigation; the appropriateness of having the action tried in a forum where the court is familiar with the law that must govern the case, rather than having a court in some other forum step into a quick-sand of conflict of laws problems and foreign law.

"*Petty,* 363 Pa. Super. at 282, 525 A.2d at 1232 (citing *Gulf Oil Corp.,* 330 U.S. at 508-509, 67 S.Ct. at 843); see also, *Rini v. N.Y. Central R. Co.,* 429 Pa. 235, 239, 240 A.2d 372, 374 (1968); *Plum v. Tampax Inc.,* 399 Pa. 553, 560-61, 160 A.2d 549, 553 (1960).

"Appellants have presented both 'private' and 'public' elements which, they contend, make a strong case for dismissal. The trial court found that the Shears reside and are domiciled in New Jersey; that the cause of action and location of the K-Mart department store were located in New Jersey; and, that witnesses also live in New Jersey. However, it is apparent from the trial court's 1925(b) opinion that these factors were specifically balanced against the weighty consideration to be given to a plaintiff's choice of forum. The trial court balanced these factors against the following: *that the defendant* and key witness Rigley *lives in Pennsylvania; that Mrs. Shears received some of her medical treatment in Philadelphia;* that the *appellants sought the expert opinions of physicians located in Pennsylvania who ultimately may be called to testify at trial; and, that K-Mart maintains six stores in the Philadelphia area. The trial court concluded that the private elements* established by Rigley and K-Mart *did not . . .* override the Shears' choice of venue. (emphasis supplied)

"However, our analysis does not stop here. The trial court must also analyze certain 'public' interests before

reaching a determination. *Petty, supra.* Appellants take issue with the trial court's failure to consider the Philadelphia court's substantial backlog of civil cases in rendering its decision. Pennsylvania courts have long recognized the administrative burdens that follow when 'litigation is piled up in congested centers instead of being handled at its origin.' *Plum,* 399 Pa. at 561, 160 A.2d at 553 (citation omitted). It is proper for the trial court to address those considerations affecting the court's own administrative and legal problems, including court congestion. *Petty, supra.* Here, however, the trial court did not dismiss the matter. *As we find that there are sufficient contacts with the Philadelphia forum* (emphasis supplied), we decline to juxtapose the scenario where the trial court *dismisses* a matter based upon public factors with the scenario where a trial court, well within its discretion decides to entertain the litigation. (emphasis in original)

"The appellants contend that the trial court abused its discretion in weighing the relevant factors based on the holding of this court in *Cinousis v. Hechinger Department Store,* 406 Pa. Super. 500, 594 A.2d 731 (1991). This court recognizes the significance of both the 'private' and 'public' interests to be considered by the trial court. When reviewing the trial court's decision to dismiss a matter based on forum non conveniens, this court will find an abuse of discretion if the trial court has clearly erred in weighing the factors to be considered. *Petty,* 363 Pa. Super. at 282, 525 A.2d at 1232-33. (citation omitted) In *Cinousis, the court considered whether the trial court abused its discretion in dismissing the action* under section 5322(e). The trial court *found that there were*

*no contacts with the Pennsylvania forum other than the fact that the defendant had operated at least one store in Philadelphia.* In contrast, as recounted above, the trial court here found that the appellants had significant contacts with the Pennsylvania forum. Thus, the trial court's refusal to dismiss the action based on these contacts with Philadelphia County, coupled with the trial court's *implicit* finding that the matter would not be placed on a 'stockpile' of pending civil suits, was not an abuse of discretion. (emphasis supplied) *Petty, supra; Brown, supra; Caplan, supra;* Hosiery, *supra.*"

The *Shears* court affirmed the trial court's retention and refusal to dismiss on the merits as well as because no stipulation was offered to waive the statute of limitations, unlike the case at bar.

Plaintiff in its "Statement of matters complained pursuant to Pa.R.A.P. 1925(b)" sets forth in paragraphs 1(e) and (f) as follows:

"(e) many of the asbestos products at issue were manufactured in or assembled in Philadelphia, particularly the Budd rail cars assembled in Philadelphia and the Budd disc brake linings made in Philadelphia to which decedent was exposed;

"(f) one of moving defendant ACF's predecessors had been incorporated in Philadelphia for a short period of time while it manufactured and assembled rail cars with asbestos in Berwick, Pennsylvania."

While *it is not disputed that* one defendant, The Budd Company, did manufacture Budd rail cars with asbestos in Philadelphia from 1931 through 1981 (excluding 1941 through 1945) and also made Budd disc brake linings in

Philadelphia (exhibit "H", plaintiff's submission of December 11, 2003), there is no evidence in this record supporting the allegation that the decedent *in Kansas* was exposed to the Budd rail cars or any other Budd product. Thus, exhibit "H" and other exhibits in plaintiff's summary of "numerous" connections to Philadelphia County and to Pennsylvania merely support a finding of jurisdiction and venue but are not persuasive as to the weighty factors required in considering forum non conveniens motions.

Plaintiff's materials set forth in exhibit "J," December 11, 2003, document that a predecessor of defendant ACF Industries LLC first produced an all-steel passenger car in 1904 and built 299 additional such cars by 1906, all from Berwick, Pennsylvania. ACF decided to cease the production of rail cars at Berwick (Pennsylvania) in late 1962. (Exhibit "P," plaintiff's submission, December 11, 2003.) Just as in the connection of The Budd Company to Pennsylvania, such connection is not case specific to Kansas and tenuously supports jurisdiction and venue, but is not an appropriate weighty factor concerning the instant issue of forum non conveniens.

The public interest in efficient judicial administration strongly favors dismissing this action pending and refiling same in the available alternate forum of Kansas. There is simply no valid reason that the people of Philadelphia County should bear the burdens of adjudicating this case, including jury duty and the expense of conducting a trial. See *Tyro Indus. Inc. v. James A. Wood Inc.,* 418 Pa. Super. 296, 302, 614 A.2d 279, 282 (1992) ("if the case were heard in Philadelphia, Pennsylvania,

tax dollars would be spent on a controversy with only tangential contacts with Philadelphia"); *Endre v. Trump Marina,* 42 D.&C.4th 106, 110 (1999) (opining that citizens of Philadelphia should not be subjected to jury duty in action where neither plaintiff nor defendant is a taxpaying citizen of Pennsylvania).

Trial of this lawsuit in Philadelphia would also give rise to needless legal complexity. Because Kansas law would most likely apply in this case, see *Griffith v. United Air Lines Inc.,* 416 Pa. 1, 203 A.2d 796 (1964), the court would be required to engage in a conflict of laws analysis and to apply unfamiliar foreign law. This fact alone weighs strongly against trying this action in a Pennsylvania court. See *Tyro,* 418 Pa. Super. at 301, 614 A.2d at 282 (emphasizing "appropriateness of having the action tried in a forum where the court is familiar with the law that must govern the case, rather than having a court in some other forum step into a quick-sand of conflict of laws problems and foreign law").

Perhaps the most compelling public interest factor favoring a dismissal or stay on forum non conveniens grounds is the enormous burden that this court already faces in the coordinated PPA litigation. Several hundred individual PPA cases have already been filed in Philadelphia County. Most of those cases, like this one, involve out-of-state plaintiffs who chose to file in Philadelphia County for no apparent reason other than the fact that their attorneys have their offices here—a fact of no relevance to a forum non conveniens analysis. *Cinousis v. Hechinger Dep't Store,* 406 Pa. Super. 500, 504, 594 A.2d 731, 733 (1991).

Under the procedural context of this case, the filing by the defendant of the instant motion five months prior to trial and when discovery had not substantially been completed cannot be said to be untimely.

While Pennsylvania cases under Rule 1006(d)(1) are analyzed under a different standard in order to transfer to another county within Pennsylvania, the case of *Borger v. Murphy,* 797 A.2d 309 (Pa. Super. 2002), approved of a change of venue three days before jury selection on a petition filed about six weeks prior to the scheduled trial, and stated that the trial court did not abuse its discretion. (At page 312.)

Also, the case of *James E. Wood v. DuPont,* 2003 Pa. Super. 268, 2003 Pa. Super., Lexis 2082, decided en banc by the Superior Court, affirmed a Philadelphia Common Pleas Court judge's transfer of a personal injury case against a DuPont research facility from Philadelphia to Bradford County and stated that timeliness *"in and of itself"* was not a bar to a court's decision to grant a *transfer* even after the close of discovery. Just as Rule 1006(d)(1) did not impose a limit on parties seeking to transfer venue, 42 Pa.C.S. §5322(e) also does not impose a time limit for parties seeking to dismiss for forum non conveniens under that statute. Just as in *Wood, supra,* plaintiff cites no case in Pennsylvania where a motion to dismiss under 42 Pa.C.S. §5322(e) was denied based solely on the timeliness of the motion.

In *Farley v. McDonnell Douglas Truck Services Inc.,* 432 Pa. Super. 456, 638 A.2d 1027 (1994) cited by plaintiffs (in footnote 1 on pages 11 and 12 of response), the Superior Court noted that the trial court which granted

motion to dismiss had failed to make a finding that an alternative forum was available, unlike the instant case, and, thus, the Superior Court found the trial court had abused its discretion in dismissing the complaint. The *Farley* trial court, *supra,* failed to consider that a year's worth of discovery had taken place in Philadelphia, whereas we have considered that factor.

In this case, the fact that discovery has already taken place is outweighed by the following: (1) that discovery may be utilized in the new forum, (2) by the private factor analysis showing virtually no contact with Pennsylvania, and (3) by the public factor analysis, on its own. Accordingly, this court has provided little weight to that prior discovery factor.

Here, unlike cases cited in *Farley* which considered delay as a factor, the parties themselves permitted the time for filing such a motion to dismiss and by preparing the various case management orders and providing for a discovery schedule that allowed and justified the time of filing this motion in this case. One must *await* appropriate discovery deadlines in order that the record be established that will permit consideration of a motion to dismiss pursuant to section 5322(e) if such a motion is contemplated.

More importantly, in *Farley* the appellants were residents of Philadelphia, Pennsylvania; appellant was treated in Philadelphia for his injury; and at least one of the defendants had an office in Philadelphia, all factors considered by the trial court in *Farley. But* the *Farley* court emphasized that witnesses concerning the appellant's employment and other key documents and wit-

nesses were all in Pennsylvania and *not* considered by the trial court. (432 Pa. Super. 464, 638 A.2d at 1030.)

In that context, in *Farley,* the delay and discovery already taken was just the icing on the cake, not a single determinative factor as the plaintiff here argues. Here the congestion is not in Philadelphia courts generally, as argued in *Farley, supra,* but in the mass tort litigation section in which Philadelphia has been a pioneer and the effectiveness of which is now in jeopardy because of the nationwide infusion of cases without significant contact or connection to Pennsylvania. Philadelphia here, unlike *Farley,* does not have an interest in a case without any significant contact and certainly not where a Pennsylvania resident is not involved.

There are clear examples of the defendant having been hampered in defending itself and the ability to defend itself at trial. *Cinousis, supra,* refers to the *"possibility of delay and increased costs in completing a trial."* (406 Pa. Super. at 504, 594 A.2d at 733.) The admitted facts set forth in the petition to dismiss and the response reasonably suggest that prior to the trial in this case, it is likely that witnesses may be unwilling to testify live and document retrieval may suddenly be difficult with attendant significant costs.

The benefits of Pennsylvania coordinated proceedings will not be lost with an action in a new forum, for example, the state of Kansas. The interests of Pennsylvania citizens to the instant case are tangential and not of any significance.

The so-called trend in mass tort cases against using the doctrine of forum non conveniens just does not exist

in Pennsylvania state courts, an admitted leader in the mass tort area. There is enough of an exploding area of complex mass tort litigation involving Pennsylvania citizenry and/or key witnesses connected to liability and/or damages to Pennsylvania without burdening a valuable system by stretching its resources to an undesirable limit.

It certainly is reasonable from this record to conclude that the substantial choice of law decisions appear to be non-Pennsylvania in nature.

The emphasis on delay in asserting section 5322(e) motions in federal courts is not shared in Pennsylvania courts as noted *supra.* This is not the first issue on which those courts respectfully disagree.

The case at bar is not a national case and does not have strong ties to Pennsylvania. Pennsylvania intends to maintain its significant role in mass tort litigation by applying its efforts strenuously in appropriate cases with appropriate Pennsylvania contacts.

Since the advent of asbestos litigation, the number and scope of these cases have grown dramatically. There have been approximately 24 mass tort programs in Philadelphia and currently, there are 13 ongoing programs here: asbestos, bone screw, lead paint, carpal tunnel syndrome, latex gloves, Fen-Phen, Lotramex, the Pier 34 collapse, Silica, Propulsid, *PPA* (emphasis supplied), Baycol and Rezulin. There are presently 7,135 outstanding cases as of September 12, 2003, in the mass tort programs. In 1992, Philadelphia County was the first jurisdiction in the country to create a separate litigation program and facility, the Complex Litigation Center, to handle what the Pennsylvania Supreme Court properly envisioned as

an exploding area of tort litigation. This judge was appointed to coordinate the various mass tort programs.

If the instant case is not properly dismissed under section 5322(e), then virtually no case would be subject to such dismissal and that was not the intent of that Pennsylvania legislation.

On both and either analysis of private and public factors, the balance favors a dismissal of this case because this court has determined that a tribunal in another jurisdiction, *i.e.,* the state of Kansas, offers a more convenient and appropriate situs for the action; and Pennsylvania is an inconvenient forum. In the exercise of this court's discretion, I dismiss this matter because the circumstances presented in this case supply the "weighty reasons" necessary to disturb the plaintiff's choice of forum.

This court finds that in the interest of substantial justice, the matter should be heard in another forum, and the plaintiff's action is dismissed with defendants providing the necessary stipulations noted *supra.*

I have considered the plaintiff's arguments suggesting that the defendant should be estopped from dismissing this case, having conducted extensive discovery prior to the filing of this motion and while a proper item for consideration, the case law suggests that it pales in relation to the other private and public factors and, thus, on balance this case must be dismissed.

The recent Superior Court opinion in *D'Alterio v. New Jersey Transit Rail Operations Inc.,* 2004 Pa. Super. 42 (2004) does not alter the conclusion that this case should be dismissed. The *D'Alterio* case is distinguishable on a

number of different grounds, and, therefore, this court should not adopt its holding here.

In *D'Alterio,* the plaintiff was a resident of New Jersey, was injured in New Jersey and brought suit in Philadelphia against New Jersey Transit, a New Jersey corporation that does business in Philadelphia. The case proceeded to arbitration in the Philadelphia Court of Common Pleas, with the panel finding in favor of the plaintiff. The defendant appealed. After a show cause hearing, the trial judge, sua sponte, proceeded to dismiss the plaintiff's case on forum non conveniens grounds. The Superior Court found that the trial court abused its discretion, giving weight to the fact that the parties had engaged in discovery; the case was set for trial; and at no time did the defendant raise the issue of forum non conveniens. Moreover, at the show cause hearing, the defendant did not allege that its access to sources of proof or witnesses would be impeded by trial in Philadelphia. (*D'Alterio,* slip op. at 7-8.)

In the instant case, the trial judge did not act sua sponte, and the defendant filed a petition to dismiss. In this case, the defendant did preserve and raise the issue of forum non conveniens. In this case, the defendant did allege that its access to sources of proof or witnesses would be impeded at trial in Philadelphia.

Perhaps the most obvious difference between this case and *D'Alterio* is the fact that here a case management order negotiated by the parties themselves governs the filing of dispositive motions and discovery. No such case management order was present in the *D'Alterio* case.

554

Accordingly, the *D'Alterio* case in no way affects the instant opinion of this court.

---

IN RE: ASBESTOS LITIGATION

C.P. of Philadelphia County, October Term 1986, No. 0001

ORDER

And now, August 26, 2002, it is hereby ordered and directed that all product identification and answers to interrogatories are due to opposing counsel 90 days prior to jury selection.

It is further ordered that *all* depositions, including plaintiffs and co-workers, shall be completed not later than 30 days prior to jury selection. All motions for summary judgment shall be filed 10 working days prior to jury selection.